Matthew A. Baldassin
Jeffrey R. Kuchel
CROWLEY FLECK PLLP
P.O. Box 7099
Missoula, MT 59807-7099
Telephone: (406) 523-3600
Fax: (406) 523-3636
mbaldassin@crowleyfleck.com
jkuchel@crowleyfleck.com

*Attorneys for Defendants Allegheny Casualty Company,*
*International Fidelity Insurance Company, First Call Bail and*
*Surety, Inc., and Michael Ratzburg*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| EUGENE DESHANE MITCHELL; SHAYLEEN MEUCHELL, on their own behalf and as next friend of B.M., | Cause No.: 9:19-cv-00067-DLC |
| Plaintiffs, | |
| v. | |
| FIRST CALL BAIL AND SURETY, INC.; ALLEGHENY CASUALTY COMPANY; INTERNATIONAL FIDELITY INSURANCE COMPANY; THE MONTANA CIVIL ASSISTANCE GROUP; MICHAEL RATZBURG; VAN NESS BAKER, JR.; and JASON HAACK, | **MEMORANDUM IN SUPPORT OF DEFENDANTS FIRST CALL BAIL & SURETY, INC.'S, ALLEGHENY CAS. INS. CO.'S, INT'L FIDELITY INS. CO.'S, AND RATZBURG'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |
| Defendants. | |

Defendants First Call Bail and Surety, Inc. ("First Call"), Allegheny

Casualty Company ("Allegheny"), International Fidelity Insurance Company

("Int'l Fidelity"), and Michael Ratzburg ("Ratzburg") (Allegheny and Int'l Fidelity

referred herein as the "Surety Defendants") (collectively "Moving Defendants")

submit this brief in support of their motion to dismiss.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................v

EXHIBIT INDEX ...................................................................... ix

I.      INTRODUCTION ...................................................................1

II.     LEGAL STANDARD ...............................................................1

III.    FACTS.................................................................................2

    A.    **Plaintiffs Contracted to Secure Mitchell's Conditional Release from Jail** ....................................................................2

    B.    **Mitchell Failed to Appear and Violated the Agreement** ................3

    C.    **MCAG Apprehended Mitchell Because He Failed to Appear**........4

    D.    **The State District Court Held Mitchell's Arrest Was Lawful**........4

    E.    **Materials the Court Can Consider** ...........................................5

IV.     LAW AND APPLICATION .....................................................5

    A.    **Federal and Montana Law Support the Practice of Monetary Bail** .......................................................................................5

        1.    *Monetary Bail is Lawful and Plays an Important Role in our Legal System.* ...............................................................6

        2.    *Montana Law Expressly Authorizes Recovery of those Violating Bond Agreements.* ..........................................7

            a.    Commercial bail bonding is lawful in Montana. .............7

            b.    Montana law authorizes recovery of bail jumpers. ..........7

    B.    **Plaintiffs' RICO Claims Fail as a Matter of Law** ...........................9

        1.    *The McCarran-Ferguson Act Bars Plaintiffs' RICO Claims.*.9

        2.    *Plaintiffs' Allegations Do Not Support a RICO Claim.* .........11

            a.    Moving Defendants Are Not an "Enterprise." ...............11

            b.    Plaintiffs Allege No Colorable Predicate Acts...............13

                i.    *Kidnapping cannot be a predicate act here.* .........13

                ii.   *Plaintiffs' allegations do not reflect the predicate act of extortion.*......................................................14

            c.    There was no "pattern of activity" essential to a RICO claim.................................................................17

        i.     *Plaintiffs allege only a single act of extortion.*.......17

        ii.    *Plaintiffs fail to allege the requisite continuity to establish a pattern.* ................................................18

    d.    Plaintiffs do not sufficiently plead the requisite elements of control..........................................................................19

    e.    Both injury and causation are missing from the Complaint. .......................................................................21

        i.     *Plaintiffs allege no injury arising from alleged extortionate acts.* ...................................................21

        ii.    *Proximate causation is absent.*.............................21

  **C.**     **Plaintiffs' State Law Claims Fail** ...................................................23

    ***1.***    ***Montana Consumer Protection Act.***........................................23

      a.    The MCPA claim is time barred.....................................23

      b.    For-profit bail bonding is lawful and therefore not an unfair act or practice. ......................................................24

    ***2.***    ***Plaintiffs' Common Law Claims Fail.*** ...................................24

      a.    Trespass ........................................................................25

      b.    False Imprisonment ......................................................25

      c.    Assault ..........................................................................25

      d.    Strict Liability...............................................................26

**V.**       CONCLUSION ..................................................................................28

## TABLE OF AUTHORITIES

**Cases**

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006)......................................22, 23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................1

*Boyle v. U.S.*, 556 U.S. 938 (2009) ...........................................................................11

*Britton v. Farmers Ins. Grp. (Truck Ins. Exch.)*, 721 P.2d 303 (Mont. 1986) ...10, 24

*Buckman v. Am. Bankers Ins. Co. of Fla.*, 924 F.Supp. 1156

    (S.D.Fla. 1996) ...............................................................................9, 10, 15

*Buckman v. American Bankers Ins.* 115 F.3d at 893 (11th Cir. 1997)...............15, 16

*Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083 (9th Cir. 2002).............................11

*Cohen v. U.S.*, 82 S.Ct. 526 (1962).............................................................................6

*Comm. to Protect Our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp.

    3d 1132 (E.D.Cal. 2017).......................................................................12

*Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010) .............................2

*Davis v. Westphal*, 405 P.3d 73 (Mont. 2017)...........................................................25

*Dept. of Econ. Dev. v. Arthur Andersen & Co.*, 924 F.Supp. 449

    (S.D.N.Y. 1996)..................................................................................20

*Dick Irvin Inc. v. State*, 310 P.3d 524, 532 (Mont. 2013)........................................19

*Egana v. Blair's Bail Bonds Inc.*, No. CV 17-5899, 2018 WL 2463210 (E.D.La.

    June 1, 2018)..............................................................................18, 19, 20

*Gomez v. Guthy-Renker, LLC*, No. EDCV-14-01425-JGB(KKX), 2015 WL

    4270042 (C.D.Cal. July 13, 2015).......................................................12

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989) ..........................................13, 19

*Hein v. Sott*, 353 P.3d 494 (Mont. 2015) .............................................................23, 24

*Holmes v. Sec. Inv'r Prot. Corp.,* 503 U.S. 258 (1992) ...........................................23

*Hughes v. Pullman*, 36 P.3d 339 (Mont. 2001) ........................................................25

*Izenberg v. ETS Srvs.*, 589 F.Supp.2d 1193 (C.D.Cal. 2008)...................................11

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ..........................................1

*Matkovic v. Shell Oil Co.*, 707 P.2d 2 (Mont. 1985) .................................................26

*McCaul v. First Mont. Bank, Inc.*, No. CV 17-41-BU-BMM-JCL, 2018 WL
    6717098 (D.Mont. Oct. 29, 2018) ........................................................................11

*Merchants Home Delivery Services, Inc. v. Frank B. Hall & Co., Inc.*, 50 F.3d 1486
    (9th Cir. 1995) ...............................................................................................9, 10

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768
    (9th Cir. 2002) .....................................................................................................22

*Oscar v. Univ. Students Coop. Ass'n*, 965 F.2d 783 (9th Cir. 1992).......................21

*Ouszts v. Maryland Nat. Ins. Co.*, 505 F.2d 547 (9th Cir. 1974)..............................6

*Rohrer v. Knudson*, 203 P.3d 759 (Mont. 2009).......................................................24

*Rosner v. Bank of China*, 528 F.Supp.2d 419 (S.D.N.Y. 2007) ...............................20

*Rothman v. Vedder Part Mgmt.*, 912 F.2d 315 (9th Cir. 2005)................................14

*Saucier ex rel. Mallory v. McDonald's Rest. of Mont., Inc.*, 179 P.3d 481
    (Mont. 2008)........................................................................................................26

*Savage v. Council on Am.-Islamic Relations, Inc.*, No. C 07-6076 SI, 2008 WL
    2951281 (N.D.Cal. July 25, 2008) ...............................................................22, 23

*Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393
    (9th Cir. 1986) ...............................................................................................13, 18

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)..........................................13, 21

*Shaw v. Nissan North America, Inc.*, 220 F. Supp. 3d 1046 (C.D.Cal. 2016)..........12

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001).........................1, 2

*Stack v. Boyle*, 342 U.S. 1 (1951) ..............................................................................6

*Sunburst Sch. Dist. No. 2 v. Texaco, Inc.*, 165 P.3d 1079 (Mont. 2007)...................8

*Taylor v. Taintor*, 83 U.S. 366 (1872) ........................................................6, 8, 9, 24

*U.S. v. Turkette*, 452 U.S. 576 (1981).......................................................................12

*Walter v. Drayson*, 538 F.3d 1244 (9th Cir. 2008)....................................................19

**Statutes**

15 U.S.C. § 1011 ..............................................................................................9

15 U.S.C. § 1601 .............................................................................................15

15 U.S.C. § 1602(e) .........................................................................................15

18 U.S.C. § 891 ...............................................................................................15

18 U.S.C. § 892 ...............................................................................................15

18 U.S.C. §§ 892(b)(1–4) ................................................................................15

18 U.S.C. §§ 892–894 ......................................................................................14

18 U.S.C. § 1951 .............................................................................................14

18 U.S.C. § 1951(b)(2)......................................................................................14

18 U.S.C. § 1961(1) .........................................................................................13

18 U.S.C. § 1961(4) .........................................................................................11

18 U.S.C. § 1961(5) .........................................................................................17

18 U.S.C. § 1961–1968....................................................................*passim*

18 U.S.C. § 1962(c) .........................................................................................11

Mont. Code Ann. § 1-1-108 ...............................................................................7

Mont. Code Ann. § 1-2-103 .............................................................................24

Mont. Code Ann. § 3-1-516 ...............................................................................7

Mont. Code Ann. §§ 33-1-101–115 .................................................................10

Mont. Code Ann. § 33-26-108 ...........................................................................7

Mont. Code Ann. § 45-5-302 ...........................................................................13

Mont. Code Ann. § 45-5-302(1) ......................................................................13

Mont. Code Ann. § 46-9-102 .............................................................................7

Mont. Code Ann. § 46-9-121 .............................................................................7

Mont. Code Ann. § 46-9-201 .............................................................................7

Mont. Code Ann. § 46-9-301 ..........................................................................7

Mont. Code Ann. § 46-9-401(1)(d)................................................................7

Mont. Code Ann. § 46-9-401(3) ..............................................................7, 24

Mont. Code Ann. § 46-9-503(2) ....................................................................7

Mont. Code Ann. § 46-9-510(1)(b).........................................................7, 24

## Other Authorities

Restatement (Second) of Torts § 520.........................................................26

Restatement (Second) of Torts § 892A......................................................26

## Rules

Fed. R. Evid. 201 .........................................................................................5

Fed. R. Evid. 202 .........................................................................................5

## EXHIBIT INDEX

Exhibit 1
    *Notice of Bond Forfeiture* (Apr. 19, 2017)......................................................3

Exhibit 2
    *Bench Warrant* (Apr. 19, 2017)......................................................4

Exhibit 3
    *Revocation of Bond* (Apr. 21, 2017)...............................................4

Exhibit 4
    *Montana v. Baker*, No. DC-17-588, *Order*, 4, (May 9, 2018) ......................5

## I.     INTRODUCTION

Plaintiffs' Complaint is an indictment of the monetary bail system in American law, not an effort toward redress of any injury suffered on their behalf. Their claims run contrary to Montana statute and nearly a century and a half of decisional law affirming the right of bail bondsmen and their agents to apprehend persons for whom they have undertaken bail.  Ultimately, the matter is straight forward—the issuance of bail bonds and apprehension of those who breach the terms of bail bond agreements is lawful in Montana.

## II.     LEGAL STANDARD

When considering a Rule 12(b)(6) motion, the Court determines whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Factual allegations that only permit the court to infer "the mere possibility of misconduct" are insufficient. *Ashcroft*, 556 U.S. at 679.

The Court may also consider and take judicial notice of matters of public record, *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), and consider evidence on which the complaint "necessarily relies if: (1) the complaint refers to

the document; (2) the document is central to the plaintiff's claim; and (3) no party

questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-

Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 999 (9th Cir. 2010).  Where an exhibit

properly before the district court conflicts with the allegations in the complaint, the

exhibit controls.  *Sprewell*, 266 F.3d at 988.

## III.   FACTS

### A.   Plaintiffs Contracted to Secure Mitchell's Conditional Release from Jail

On January 4, 2017, Plaintiff Eugene Mitchell ("Mitchell") and his wife,

Shayleen Meuchell ("Meuchell"), entered into a "Bail Bond Agreement"

("Agreement") with the Surety Defendants and First Call.  *Compl. for Damages,*

*Declaratory Relief, and Req. for Jury Tr.*, ¶ 6; Ex. A to *Compl.* (Dkt. 1-1).

Mitchell was identified in the Agreement as "Defendant" and Meuchell as

"Indemnitor."  *Id.*  They agreed to pay a $228.00 fee to First Call, and in exchange,

the Surety Defendants provided a $1,670 bond for Mitchell's release from jail.  *Id.*

Plaintiffs agreed, *inter alia*, that during Mitchell's release on bond, he was

under the "control and jurisdiction" of First Call and Surety Defendants, and

Plaintiffs acknowledged that First Call had the right "to apprehend, arrest and

surrender" him.  Ex. A, 2 at ¶ 3.  Among other things, Plaintiffs agreed that this

event would occur upon a breach of Mitchell's obligations, including failing to

appear.  *Id.*, ¶ 4(c).

> You irrevocably grant to Surety and Bail Producer, and their agents and representative, the right to enter your residence, or any other property which you own and occupy, without notice, at any time, for the purpose of locating, arresting and returning the defendant to custody . . . .

*Id*., ¶ 15.

The Agreement expressly permitted First Call to apprehend and arrest Mitchell if he "commit[ed] any act that constitutes reasonable evidence of [Mitchell's] intention to cause a forfeiture of the Bond," or "if there [was] a material increase in the risk assumed by the Surety (as determined by Surety in its sole and absolute discretion)." *Id*., ¶¶ 4(c), (i). Plaintiffs granted the right to enter their residence without notice, at any time, and "waived and released any and all causes of action in connection therewith including torts of trespass and false imprisonment." *Id*., ¶ 15.

First Call allowed Plaintiffs to pay the $228 fee in two installments, the first on January 4, 2017, and the second one week later. *Compl*., ¶ 31. Moving Defendants did not lend Plaintiffs any money or charge interest, and nowhere in the Agreement did Defendants, Mitchell, or Meuchell agree or suggest that Moving Defendants were doing so. *See* Pls' Ex. A, *passim*.

## B.    Mitchell Failed to Appear and Violated the Agreement

Mitchell failed to appear for an April 2017 hearing. *Compl*., ¶ 8. The court subsequently issued a Notice of Bond Forfeiture, requiring that Mitchell be returned to jail or else First Call's bond would be forfeited. *Id*. ¶ 34; **Exhibit 1**.

The court also issued a bench warrant, authorizing night service.  **Exhibit 2**.  First

Call also revoked the bond.  *Compl*., ¶ 36; **Exhibit 3**.

## C.   MCAG Apprehended Mitchell Because He Failed to Appear

First Call requested the assistance of Defendant Montana Civil Assistance

Group ("MCAG") in apprehending Mitchell.  *Compl*., ¶ 100.  MCAG notified

Meuchell and Mitchell's friend that his bail bondsman was looking for him and

sought Mitchell in establishments he frequented.  *Id*., ¶¶ 9, 45–47.  Mitchell did not

appear in court or contact First Call.

On April 23, 2017, MCAG observed that Mitchell's home was occupied.

When no one answered the door, MCAG entered the home.  MCAG

representatives were legally armed.  *Id*., ¶ 10.  MCAG informed Mitchell that he

had violated the conditions of his bond, apprehended him, and transported him to

the Ravalli County jail.  *Id*., ¶¶ 55–56.  Ravalli County law enforcement arrested

Mitchell on a warrant.  *Id*., ¶ 58.

## D.   The State District Court Held Mitchell's Arrest Was Lawful

In October 2017, the State charged an MCAG representative with

Aggravated Burglary related to the incident in question.  The Montana district

court determined that Montana law, federal law, and the Agreement provided a

legal basis for MCAG's entry into Mitchell's home to arrest him.  The "required

element of trespass for the crime of aggravated burglary" could not be satisfied and

4

the count was dismissed.  *Montana v. Baker*, No. DC-17-588, *Order*, 4, (May 9, 2018) (**Exhibit 4**).

### E.    Materials the Court Can Consider

Plaintiffs reference, but do not attach to their Complaint, several key documents, each of which are attached hereto as Exhibits 1, 2, 3, and 4.  *See*, *e.g.*, *Compl*., 11 n. 8 (referencing motion to dismiss in the *Baker* criminal matter).  Each of these documents is fundamental to Plaintiffs' claims and undermines the foundational allegations in their Complaint.  The Court may take judicial notice of these materials.  Fed. R. Evid. 201, 202.

## IV.    LAW AND APPLICATION

This brief begins by addressing longstanding common law concerning bail bonding, then addresses Montana law on bail bond practice.  It next discusses the inapplicability of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961–1968 ("RICO").  Finally, it addresses Plaintiffs' Montana law claims.

### A.    Federal and Montana Law Support the Practice of Monetary Bail

Commercial bail is a fundamental part of the United States criminal justice system.  The law supports the practices Plaintiffs portray as criminal.

### 1.    *Monetary Bail is Lawful and Plays an Important Role in our Legal System.*

The bail system allows the release of many accused criminals from custody while ensuring their appearance at mandatory court proceedings.  *See*, *e.g.*, *Cohen v. U.S.*, 82 S.Ct. 526, 528 (1962).  Bail allows the accused, who is presumed innocent, to leave the confines of jail, return to work and family, and prepare a defense when he would not otherwise be permitted to do so.  *Stack v. Boyle*, 342 U.S. 1, 8 (1951).

Under common law, contract, and statute, bondsmen have the authority to take a defendant into custody if needed to secure his appearance.  *See*, *e.g.*, *Taylor v. Taintor*, 83 U.S. 366, 371–72 (1872).  Most American jurisdictions adopted this common law structure early in American history, and the U.S. Supreme Court has recognized the authority of bondsmen to seize and imprison a principal in his home.  *Ouszts v. Maryland Nat. Ins. Co.*, 505 F.2d 547, 551 (9th Cir. 1974).  No additional legal authority is needed—bondsmen are comparable to a sheriff arresting an escaped prisoner.  *Id*.  The surety or bond agent retains custody of the accused; he technically remains incarcerated with the surety serving as his jailer.  *Id*.  The common law right of a bondsman to arrest his principal arises out of contract.  *Id*. (citation omitted).  As a contract right, it may be exercised wherever the principal is found, though the State may regulate the business and practices of bondsmen if it chooses.  *Id*.

**2.     *Montana Law Expressly Authorizes Recovery of those Violating Bond Agreements.***

      a.     <u>Commercial bail bonding is lawful in Montana.</u>

Montana courts have the authority to impose monetary bail conditions for those charged with bailable offenses. *See*, *e.g.*, §§ 3-1-516, 46-9-102, 46-9-201, 46-9-301, MCA.  A defendant who is unable to furnish the amount of court-ordered bail may obtain a commercial surety bond to secure his release; it is a common practice, *Compl*. ¶ 72, and authorized by Montana statute.  §§ 46-9-121, 46-9-401(1)(d), MCA.  The Commissioner of Securities and Insurances regulates sureties who sell or negotiate commercial bail bonds.  § 33-26-108, MCA.

      b.     <u>Montana law authorizes recovery of bail jumpers.</u>

Sureties have broad authority to recover, i.e., arrest, defendants for whom they have posted bond, either before they fail to appear or if the court declares the bond forfeited for failing to appear.  The arrest and surrender of the defendant by his sureties is authorized at any time before the forfeiture of bail or within 90 days afterward.  § 46-9-510(1)(b), MCA.  This power applies not only when a court deems a bond forfeited due to the defendant's failure to appear pursuant to § 46-9-503(2), but any time the surety "feels insecure in accepting liability for the defendant."  § 46-9-401(3), MCA.  Because the Montana Legislature has not otherwise regulated sureties' recovery of those who jump bail, the common law controls.  § 1-1-108, MCA ("the common law shall be the law and rule of

decision" where it does not conflict with the statutes); *Sunburst Sch. Dist. No. 2 v. Texaco, Inc.*, 165 P.3d 1079, 1091 (Mont. 2007) (common law not statutorily abrogated unless the "statute expressly or by necessary implication declares." (citation omitted)); *see also* Ex. 4.  The Montana State district court, addressing the facts of this case, recognized these principles, holding that the common law announced in *Taylor v. Taintor* was not abrogated and that it was the law of Montana: "Montana's bail statutes have not abrogated the common law rights of bondsmen and bounty hunters to apprehend fugitives."  Ex. 4, 5–6.  The court quoted the United States Supreme Court in *Taylor*:

> When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment.  Whenever they choose to do so, they may seize him and deliver him up in their discharge; and if that cannot be done at once, they may imprison him until it can be done.  They may exercise their rights in person or by agent.  They may pursue him into another State; may arrest him on the Sabbath; and, if necessary, may break and enter his house for that purpose.  The seizure is not made by virtue of new process.  None is needed.  It is likened to the rearrest by the sheriff of an escaping prisoner. . . . 'The bail have their principal on a string, and may pull the string whenever they please, and render him in their discharge.' The rights of the bail in civil and criminal cases are the same.

*Id*., 5 (quoting *Taylor*, 83 U.S. at 372–73).

The Montana district court's conclusion that the common law applied and controlled was also supported by its recognition that First Call could enforce its civil bail contract, concluding:

> Mitchell expressly gave permission in writing to the surety's agents …
> to enter his home at any time for the purpose of arresting him for failing
> to appear in court.  Thus, the required element of trespass for the crime
> of aggravated burglary is not satisfied.

*Id.*, 4.

First Call was legally permitted to recover Mitchell, in his home, arrest him, and surrender him to law enforcement.[1]

## B.     Plaintiffs' RICO Claims Fail as a Matter of Law

### 1.     *The McCarran-Ferguson Act Bars Plaintiffs' RICO Claims.*

The McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq*., prohibits applying federal statutes to "the business of insurance" if those federal statutes do not "specifically relate" to "the business of insurance."  *Merchants Home Delivery Services, Inc. v. Frank B. Hall & Co., Inc.*, 50 F.3d 1486, 1489 (9th Cir. 1995). The act of posting a criminal bond insured by a surety constitutes the business of insurance.  *Buckman v. Am. Bankers Ins. Co. of Fla.*, 924 F.Supp. 1156, 1157 (S.D.Fla. 1996), *aff'd* 115 F.3d 892 (11th Cir. 1997).

---

[1] For this reason Plaintiffs' requests for declaratory relief fail as a matter of law.

The Act precludes federal regulations from interfering with a State law enacted to regulate the business of insurance.  Preclusion applies if: 1) the federal statute does not "specifically relate to the business of insurance; 2) the acts challenged *do* constitute the business of insurance; 3) the state has enacted laws regulating the challenged acts; and 4) the state law would be impaired or invalidated by the federal statute."  *Merchants Home*, 50 F.3d at 1489.  Each of those requirements are satisfied here:

1)      RICO does <u>not</u> specifically relate to the business of insurance. *Id.*;

2)      The practices at issue <u>do</u> constitute the business of insurance.  *Buckman*, 924 F.Supp. at 1157; *Compl*., ¶¶ 1, 23, 75, 90–91, 93–94, 114, p. 31 at ¶ 1;

3)      Montana has enacted a comprehensive insurance code and a comprehensive statutory bail regime.  *Compl*., ¶ 75; §§33-1-101–115, MCA; *Britton v. Farmers Ins. Grp. (Truck Ins. Exch.)*, 721 P.2d 303, 323–24 (Mont. 1986)[2]; and

4)      Applying RICO to the insurance business at issue would impair or invalidate Montana's laws.  *Britton*, 721 P.2d at 323–24 (Montana's UTPA/ MCPA enacted to regulate the business of insurance expressed in McCarran-Ferguson).

Plaintiffs' RICO claims are barred by the McCarran-Ferguson Act.

---

[2] Plaintiffs' also argues that Montana's Consumer Protection Act regulates a surety's issuance of a bail bonds, which they characterize as the practice of insurance.  *Compl*. ¶¶ 198–99.

### 2.  *Plaintiffs' Allegations Do Not Support a RICO Claim.*

Plaintiffs' RICO claims (Counts 1–3) allege a violation of 18 U.S.C. § 1962(c).  To prevail, Plaintiffs "must prove that the defendant engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and, additionally, must establish that (5) the defendant caused injury to plaintiff's business or property."  *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086 (9th Cir. 2002) (citations omitted).  Plaintiffs must specifically identify what alleged facts support each particular subsection of RICO.  *Izenberg v. ETS Srvs.*, 589 F.Supp.2d 1193, 1203–04 (C.D.Cal. 2008).

### a.  Moving Defendants Are Not an "Enterprise."

An "enterprise" is defined to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  The "enterprise" is "a group with a common purpose and course of conduct."  *Boyle v. U.S.*, 556 U.S. 938, 950 (2009).

To establish a common purpose, "[t]he facts must demonstrate all the participants acted with the same purpose in mind pursuant to a unified agenda."  *McCaul v. First Mont. Bank, Inc.*, No. CV 17-41-BU-BMM-JCL, 2018 WL 6717098, *4 (D.Mont. Oct. 29, 2018) (citation omitted).  The alleged conduct must be distinct from a defendant's own affairs.  *Comm. to Protect Our Agric. Water v.*

*Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1173 (E.D.Cal. 2017); *U.S. v.*

*Turkette*, 452 U.S. 576, 583 (1981)(requisite "enterprise" must be entity separate

and apart from the "pattern of racketeering activity" of which a plaintiff alleges).

A "common purpose" is <u>not</u> demonstrated by facts showing parties conducted only

their own ordinary business affairs and purposes.  *Id.* at 1175; *Shaw v. Nissan*

*North America, Inc.*, 220 F. Supp. 3d 1046, 1054 (C.D.Cal. 2016) (no "common

purpose" where allegations suggest an association only in a manner related to their

own primary business activities).  Nor is it established when the alleged

association-in-fact is "merely a routine contract for services."  *Gomez v. Guthy-*

*Renker, LLC*, No. EDCV-14-01425-JGB(KKX), 2015 WL 4270042, *9 (C.D.Cal.

July 13, 2015).

Plaintiffs concede that the Surety Defendants are in the business of issuing

bail bonds and acted consistently with their own ordinary business affairs and

purpose.  *Compl.*, ¶¶ 23–24, 36, 89–96.[3]  They concede that First Call, for whom

Ratzburg works, is a duly appointed bail producer and that First Call's business is

to formally secure bail bonds for incarcerated individuals—a lawful profession.

*Id.*, ¶¶ 102, 136, 139.  The Moving Defendants were conducting their own (lawful)

ordinary business affairs and purposes, and there is no other common purpose

---

[3] Plaintiffs correctly distinguish the business of the Surety Defendants from that of
MCAG.

alleged.  Plaintiffs cannot demonstrate the requisite "common purpose" and their Complaint fails to assert allegations sufficient to demonstrate an "enterprise."

      b.    <u>Plaintiffs Allege No Colorable Predicate Acts.</u>

To establish a RICO violation, a plaintiff must point to a pattern of racketeering activity.  *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1398 (9th Cir. 1986).  "Racketeering activity" is an act or threat involving specified state-law crimes, any act indictable under various specified federal statutes, and certain federal offenses, i.e., "predicate acts."  *H.J. Inc. v. Nw. Bell Tel. Co*., 492 U.S. 229, 232 (1989)(citing 18 U.S.C. § 1961(1)).  Isolated predicate acts are insufficient to establish a pattern of racketeering.  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14 (1985).

      *i.*    <u>*Kidnapping cannot be a predicate act here.*</u>

To be considered "racketeering activity" an act must be "chargeable under State law . . . ."  18 U.S.C. § 1961(1).  Plaintiffs allege kidnapping under § 45-5-302, MCA.  *Compl.*, ¶¶ 171(a), 172–173.  Kidnapping is only chargeable where there is a restraint of another "without legal authority."  § 45-5-302(1), MCA.  Montana statutory and common law expressly authorize Mitchell's arrest and surrender, and he and Meuchell expressly agreed that his failure to appear would result in arrest.  Mitchell's arrest and transport cannot, as a matter of law, constitute predicate acts.

ii.     *Plaintiffs' allegations do not reflect the predicate act of extortion.*

Plaintiffs allege extortion as a predicate act.  *Compl.*, ¶¶ 159, 171, 188.

"Extortion" is "the obtaining of property from another, with his consent, induced

by wrongful use of actual or threatened force, violence, or fear."  18 U.S.C. §

1951(b)(2).  This alleged predicate act fails as a matter of law.

Plaintiffs allege that, "Ratzburg threatened that if Mr. Mitchell did not pay

the outstanding amount due on his premium or comply with the bond agreement,

Ratzburg would 'get' him."  *Compl.*, ¶ 32.  A defendant's warning that it will

exercise its contractual rights if certain conditions are not met is <u>not</u> extortion.

*Rothman v. Vedder Part Mgmt.*, 912 F.2d 315, 318 (9th Cir. 2005).  "What you

may do in a certain event you may threaten to do . . . and thus allow the other

person the chance of avoiding the consequences."  *Id.* (citation omitted).  Taking

Plaintiffs' allegations as true, Ratzburg informed Plaintiffs of the action he and

First Call could legally take under Montana law and according to the terms of the

Agreement—terms to which Plaintiffs agreed.  That is not extortion.

Plaintiffs' extortion allegations, founded on 18 U.S.C. §§ 892–894, and

1951 are insufficient to survive a Rule 12 motion.  To prevail, Plaintiffs must

allege and establish that Moving Defendants: 1) extended credit that 2) would be

unenforceable through civil judicial process, 3) was made at an annual rate of

interest in excess of 45%, 4) at the time extension of credit was made they

reasonably believed that the creditor had collected or had the reputation of collecting credit through extortionate means, and 5) the total extension of credit exceeded $100.00.  18 U.S.C. §§ 892(b)(1–4).  Those elements are conjunctive.

First, there was no extension of credit.  "To extend credit means to make or renew any loan, or to enter into any agreement, tacit or express, whereby the repayment or satisfaction of any debt or claim, whether acknowledged or disputed, valid or invalid, and however arising, may or will be deferred."  18 U.S.C. § 891.  Here, there was no "extension of credit"—Plaintiffs paid First Call a defined amount in exchange for a specified service.

In *Buckman v. American Bankers Ins.*, *supra*, the mother of a bailee paid on a bail bond agreement for her daughter's release from jail.  115 F.3d at 893.  When the daughter failed to appear for a hearing, the court ordered the bond forfeited, and the surety subsequently initiated foreclosure proceedings on the collateral for that bond.  *Id*.  The plaintiff/indemnitor sued under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq*. (TILA).  Much like 18 U.S.C. § 892, TILA defines credit as "the right by a creditor to a debtor to defer payment of a debt or to incur debt and defer its payment."  15 U.S.C. § 1602(e)  The Eleventh Circuit affirmed the lower court's dismissal, holding that the issuance of a bail bond with collateral was not extension of credit, describing that "executing an agreement to indemnify a bail bond surety and providing [collateral] to facilitate any indemnification that may

15

become necessary" is not an extension of credit.  *Buckman*, 115 F.3d at 894.  The court explained that a bail bond agreement provides for no more than the amount due; there is no "debt", unless and until the court forfeits the bond.  If the plaintiff becomes liable for a "debt," it does not result from extension of credit—it arises from court order when the bond is breached.  *Id.*

Here, Plaintiffs allegedly paid a single, non-refundable, "premium" of $228 to secure Mitchell's release.  *Compl.*, ¶ 31; Ex. A, 2 at ¶ 1.  There was no collateral to be foreclosed upon, no money lent, and no interest charged.  Plaintiffs do not allege otherwise.  As in *Buckman*, the forfeiture of the bond was a function of Mitchell's failure to appear, the court's order that the bond be forfeited, and Mitchell's liability for the bond.

Next, the bail bond agreement was <u>not</u> made at an annual interest rate greater than 45%.  Plaintiffs do not allege, and there could be no legitimate argument otherwise, that there was interest charged by any defendant.  The Agreement indicates there was no interest charged for the services provided to Mitchell.

///

///

///

c.    There was no "pattern of activity" essential to a RICO claim.

i.    *Plaintiffs allege only a single act of extortion.*

A "pattern" is one involving "at least two acts of racketeering activity."  18 U.S.C. § 1961(5).  Plaintiffs allege as predicate acts Mitchell's arrest (kidnapping) and entry into a bail bond agreement (extortion).  *Compl.*, ¶ 149.  As a matter of law, the alleged predicate act of kidnapping fails, and Plaintiffs fail to sufficiently allege a pattern of extortionate acts.

Plaintiffs allege the predicate extortionate act was the posting of a single bail bond.  However, in order to circumvent the RICO "pattern requirement," Plaintiffs attempt to associate conduct unrelated to that single germane event.  They cite to MCAG's recovery of unrelated third parties, with unknown bonding agents, under different circumstances, in different locations, and who allegedly suffered unidentified harm unique to those third parties.  *Compl.*, ¶¶ 80–85.  Some of that alleged conduct does not involve a single party to this action.  *Id.*, ¶¶ 86–88.

Damning to Plaintiffs' alleged "pattern" is that their failure to allege another specific incident involving extortionate conduct.  They refer to arrests of other criminal defendants by MCAG, but say nothing about any other alleged "extortion."  Plaintiffs have not alleged a pattern of extortionate conduct and their Complaint should be dismissed.

ii.   *Plaintiffs fail to allege the requisite continuity to establish a pattern.*

To be actionable, the Plaintiffs must allege facts establishing a "threat of continuing activity." Where a claim fails to show "continuity plus relationship" necessary to produce a "pattern," the claim fails. *Schreiber*, 806 F.2d at 1399. "Isolated acts of alleged racketeering activity do not suffice." *Id.* The predicate act alleged by Plaintiffs relates to the single Agreement.

The facts here are substantially similar to those in *Egana v. Blair's Bail Bonds Inc.*, No. CV 17-5899, 2018 WL 2463210 (E.D.La. June 1, 2018). There, the plaintiff/criminal defendant signed a bail bond agreement to secure release from jail, and his mother signed as indemnitor. *Id.*, *1. He alleged that bounty hunters had, on at least three different occasions, arrested him, and threatened the indemnitor that plaintiff would be jailed if she did not pay. Egana brought RICO claims alleging violations including, *inter alia*, false imprisonment, kidnapping, and extortion. *Id.* In dismissing the RICO claims, the court described the key elements of a "pattern of activity":

> A party alleging a RICO violation may demonstrate continuity over a closed period by proving a serious of related predicates extending over a substantial period of time. However, alleged predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement.

*Id.*, *3 (citation omitted).  The court explained that "continuity" involves either a "closed period of repeated conduct" or "past conduct that by its nature projects into the future with a threat of repetition." *Id.* (*citing H.J. Inc.*, 492 U.S. at 241).  The court found that Egana's three alleged predicate acts "took place over only six months," a time frame insufficient to establish continuity.  *Id.*, *4.  It also recognized that Egana's complaint failed to establish a threat of continuity in the future; because he was jailed, there could be no continued threat.  *Id.*

The allegations here are even weaker than those in *Egana*.  The alleged extortionate act occurred once, not three times, and took place on a single day.  As in *Egana*, once Mitchell was remanded to the custody of the State, there was no possibility of a continued threat.

> d.      Plaintiffs do not sufficiently plead the requisite elements of control.

The "control" element of a RICO claim requires "an element of direction," i.e., the defendant must have "some part in directing [the enterprise's] affairs." *Walter v. Drayson*, 538 F.3d 1244, 1247–1249 (9th Cir. 2008).  Plaintiffs do not allege that the Moving Defendants controlled or directed the acts of MCAG.  Even if Plaintiffs could establish an agency relationship between Moving Defendants and MCAG, a principal/agent relationship <u>cannot</u> alone establish a claim against the principal for the alleged wrongful acts of the agent.  *E.g.*, *Dick Irvin Inc. v. State*, 310 P.3d 524, 532 (Mont. 2013) (defendant who exercises no supervision or

control over another is not vicariously liable for its torts); *Egana*, *6 (principal

liable for agent's conduct only when it controls actor's performance characteristic

of a master and servant relationship).

In *Rosner v. Bank of China*, 528 F.Supp.2d 419 (S.D.N.Y. 2007), the court

evaluated the control element, holding that "an alleged RICO defendant must have

had 'some part in directing' the 'operation or management' of the enterprise itself

to be liable." *Id.* at 431 (citation omitted).  A suggestion or allegation that a

defendant provided services that aided in the perpetration of a scheme does not

qualify as participation in a RICO enterprise.  *Id.*; *Dept. of Econ. Dev. v. Arthur

Andersen & Co.*, 924 F.Supp. 449, 466–67 (S.D.N.Y. 1996) ("Even [the] provision

of services essential to the operation of the RICO enterprise itself is not the same

as participating in the conduct of the affairs of the enterprise.").  Claims that allege

a party's general involvement in RICO activity are insufficient to maintain such a

claim.  *Rosner*, 528 F.Supp. at 428–29.

Plaintiffs have not alleged that First Call or Ratzburg exercised any control

over MCAG other than generally alleging an agency relationship.  As to the Surety

Defendants, Plaintiffs make the bare allegation that they "exercise control over the

bail bond agents with whom they work", but specifically only as to "public

relations efforts." *Compl.*, ¶¶ 115, 122.  They do not suggest the Surety

Defendants controlled First Call's engagement of MCAG.  Plaintiffs have not

20

suggested that Surety Defendants had any contact with MCAG at all, to say nothing of "control" over its conduct.

      e.     <u>Both injury and causation are missing from the Complaint.</u>

A claimant asserting RICO violations has "standing if, and can only recover to the extent that, he has been injured in his business or property by [reason of] the conduct constituting the violation." *Sedima*, 473 U.S. at 496.  A civil RICO plaintiff must first show that he has suffered a concrete financial loss, and second, he must show that his injury was proximately caused by defendant's alleged prohibited conduct that constitutes a RICO violation.

      i.     <u>*Plaintiffs allege no injury arising from alleged extortionate acts.*</u>

An "injury" includes two components: a concrete financial loss proximately caused by  prohibited conduct.  *Oscar v. Univ. Students Coop. Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992)(en banc).  Here, the only financial loss alleged relates to unspecified damage to Plaintiffs' front door.  *Compl.*, ¶ 65.  As set out above, that alleged damage relates exclusively to kidnapping, which is <u>not</u> colorable.  Thus, there is no concrete financial loss arising from an actionable, alleged predicate acts, and Plaintiffs lack standing to assert their RICO claims.

      ii.     <u>*Proximate causation is absent.*</u>

A RICO defendant can only be liable if its alleged conduct constituting a RICO violation was the "proximate cause" of some alleged damage.  *Oki*

*Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 773 (9th Cir. 2002). A proximate cause is one that is a substantial factor in the sequence of reasonable causation. *Id.* If the cause of any harm is a set of actions distinct from the alleged RICO violation, the requisite proximate cause does not exist. *Id.*; *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458-59 (2006).

Proximate cause does not exist here because the causal connection between what Plaintiffs allege to be the RICO violation (the Agreement) and the alleged harm (injury to the door) is too attenuated. As to the Moving Defendants, Plaintiffs allege the RICO <u>violation</u> to be the presentation and execution of the Agreement. *Compl.*, ¶¶ 30, 102, 184, 196. However, the <u>harm</u> they allege (damage to the door) occurred three months later, after Mitchell failed to appear, the bond was forfeited by the court, and MCAG entered Plaintiffs' home. *Id.*, ¶ 203. The alleged RICO violation and the alleged harm are entirely distinct.

The failure to plausibly establish this direct causal connection is fatal to Plaintiffs' RICO claims because it deprives them of standing. Plaintiffs attempt to sidestep the requirement of showing a pattern by citing alleged past behavior of MCAG or other entities. However, a plaintiff may not establish proximate causation sufficient to establish a pattern based on alleged injury to third parties. *See*, *e.g.*, *Anza*, 547 U.S. at 460; *Savage v. Council on Am.-Islamic Relations, Inc.*, No. C 07-6076 SI, 2008 WL 2951281, *13 (N.D.Cal. July 25, 2008).

22

> There must be 'some direct relation between the injury asserted and
> the injurious conduct alleged.  Thus, a plaintiff who complained of
> harm flowing merely from the misfortunes visited upon a third person
> by the defendant's acts was generally said to stand a too remote a
> distance to recover.

*Savage*, *13 (citing *Holmes v. Sec. Inv'r Prot. Corp.,* 503 U.S. 258 (1992); *Anza*,

547 U.S. at 461).

Injuries to third parties cited in the Complaint belong exclusively to those

third parties, and Plaintiffs have no standing to base their claims upon those

injuries.  Those unrelated acts do not fit within any "pattern" of conduct and

Plaintiffs cannot establish a pattern of conduct essential to their RICO claims.

**C.    Plaintiffs' State Law Claims Fail**

     ***1.    Montana Consumer Protection Act.***

Plaintiffs' Count 4 alleges a violation of the Montana Consumer Protection

Act (MCPA) for the act of "contracting with individuals for for-profit bail bond

services," and specifically that Mitchell and Meuchell entered into the Bail Bond

Agreement.  *Compl.*, ¶¶ 195–200.  Plaintiffs' MCPA claim fails first because it is

time barred and second because for-profit bail bond services are not an unfair act

or practice which offends established public policy.

     a.    <u>The MCPA claim is time barred.</u>

Claims under the MCPA are subject to a two-year statute of limitation.  *Hein*

*v. Sott*, 353 P.3d 494, 498 (Mont. 2015).  Claims accrue when the "facts

constituting the claim" were "discovered or…should have been discovered." *Id.*
The basis of Plaintiffs' MCPA claim is execution of the January 4, 2016
Agreement. *Compl.*, ¶¶ 197–199. The statute of limitations on their MCPA claim
ran on January 4, 2018. Plaintiffs' Complaint was filed after expiration of the two-
year statute of limitations and is time barred.

> b.   <u>For-profit bail bonding is lawful and therefore not an unfair act
> or practice.</u>

Under Montana law, "an unfair act or practice is one which offends
established public policy…." *Rohrer v. Knudson*, 203 P.3d 759, 764 (Mont. 2009).
Montana's public policy is expressed in its statutes. *E.g.*, *Britton*, 721 P.2d at 315
(describing that public policy is declared in statutes); § 1-2-103, MCA ("The
statutes establish the law of this state."). As described above, Montana statutory
and common law expressly permit commercial bail bonding. Plaintiffs' MCPA
claims are based on lawful acts and therefore fail as a matter of law.

### 2.   *Plaintiffs' Common Law Claims Fail.*

Plaintiffs' claims for Trespass, False Imprisonment, Assault, and Strict
Liability (Claims 5–7 and 10, respectively) fail as a matter of law because Montana
law expressly allows sureties to recover, arrest, and surrender a defendant for
whom a bail bond has been posted. §§ 46-9-401(3), 510(1)(b), MCA; *Taylor*, 83
U.S. at 372–73; Ex. A; Ex. 4.

a.    Trespass

Plaintiffs' trespass claim is asserted against First Call and Ratzburg.

However, there can be no trespass if the alleged perpetrator had consent or legal

right to enter the property.  *Davis v. Westphal*, 405 P.3d 73, 81–82 (Mont. 2017).

As described above, as a matter of law, the entry into Mitchell's home was not

unlawful, and, as the Montana district court already determined, Plaintiffs

expressly granted written permission to enter their home.  The trespassing claim

fails as a matter of law.

b.    False Imprisonment

The elements of a false imprisonment claim are restraint against the

claimant's will and unlawfulness of such restraint.  *Hughes v. Pullman*, 36 P.3d

339, 343 (Mont. 2001).  Like trespass, this claim fails because the restraint of

Mitchell was lawful.  Montana statutory and common law authorized the entry into

Plaintiffs' home and the detention and surrender of Mitchell, and contractually,

Mitchell and Meuchell each acknowledged and consented to First Call's entry into

the home.

c.    Assault

A claim for civil assault involves an intentional threat of harmful or

offensive contact coupled with the present ability to carry out the threat.  *Saucier

ex rel. Mallory v. McDonald's Rest. of Mont., Inc*., 179 P.3d 481, 494 (Mont.

2008).  A party who consents to the conduct cannot recover in an action for tort.

*Id*. (citing Restatement (Second) of Torts § 892A).  If that consent is irrevocable by

contract, it may not be terminated.  Restatement (Second) of Torts, § 892A, ¶ (5).

Plaintiffs consented to First Call's entry into their home to apprehend Mitchell.

There could be no assault as a matter of law.

### d.   Strict Liability

The activity underlying Plaintiffs' tenth claim is "bounty hunting."  *Compl*.,

¶¶ 217–220.  Moving Defendants are not bounty hunters and were not involved in

the physical entry into Plaintiffs' home.  Further, the Complaint fails to allege key

elements to a claim of strict liability.  To establish strict liability, a plaintiff must

credibly allege and establish the following:

> (a) Existence of a high degree of risk of some harm to the person, land,
> or chattels of others; (b) Likelihood that the harm that results from it
> will be great; (c) Inability to eliminate risk by the exercise of reasonable
> care; (d) Extent to which activity is not a matter of common usage; (e)
> Inappropriateness of the activity to the place where it is carried on; and
> (f) Extent to which its value to the community is outweighed by its
> dangerous attributes.

*Matkovic v. Shell Oil Co*., 707 P.2d 2, 4 (Mont. 1985) (citing Restatement (Second)

of Torts § 520).  The allegations in Plaintiffs' Complaint are insufficient to satisfy

the last four requisite elements:

(c)   Limitation of risk:  MCAG had the ability to eliminate any risk

associated with its apprehension of Mitchell and Plaintiffs do not allege

otherwise.  Plaintiffs acknowledge that MCAG looked for Mitchell in other locations he frequented, seeking to detain him away from his home.  *Compl*., ¶ 45.  The manner in which they arrested Mitchell was at their discretion.

(d)     Common usage : According to the Complaint, bounty hunting is a matter of common usage.  Plaintiffs concede the bail bond and bounty hunting industries operate across the country and have functioned in the United States since the 19th Century.  *Compl*., ¶¶ 66–68. Plaintiffs allege that "[t]he use of a commercial, for profit bail bondsmen is now prevalent in Montana and throughout the country," *id*., ¶¶ 68, 72–73, and their practices are regulated by Montana statute.  *Id*., ¶ 75.

(e)     Appropriateness of the activity:  The same allegations noted in (d) also prevent Plaintiffs from satisfying element (e).  Plaintiffs acknowledge that bail bond practice is commonplace in Montana and is addressed by Montana statute.  *Compl*., ¶¶ 73, 75, 89.

(f)     Value to the community:  Finally, as to element (f), Plaintiffs make no representation regarding the value of the bail bond practice in this State. They acknowledge that Mitchell could not have been released from jail without First Call posting bail, and that bail allowed him to return to work and family.  *Compl*., ¶¶ 29–30.  That benefit is the foundation for the entire industry.  *Id*., ¶ 69.  Having acknowledged and accepted the risks associated

27

from entering the Agreement, Mitchell clearly believed that the benefit of

his freedom outweighed the possibility that he might be arrested in his home

should he fail to perform his obligation to appear for court-ordered hearings.

Indeed, he had agreed to such terms in the past to secure his release with

other bail bond companies.  *Id.*, ¶ 58.

## V.    CONCLUSION

For the reasons set forth above, the Court should dismiss Plaintiffs'

Complaint with prejudice.  This is not the venue for indicting the commercial bail

bonding system—the change Plaintiffs seek must be obtained legislatively, not

from the judiciary.  Plaintiffs' Complaint fails to state a claim upon which relief

can be granted and it should be dismissed with prejudice.

Dated this 30th day of May, 2019.

CROWLEY FLECK PLLP

By: /s/ *Matthew A. Baldassin*
Matthew A. Baldassin
Jeffrey R. Kuchel

*Attorneys for Defendants Allegheny*
*Casualty Co., International Fidelity*
*Insurance Co., First Call Bail and*
*Surety, Inc., and Michael Ratzburg*

## CERTIFICATE OF COMPLIANCE

Pursuant to District of Montana Local Rule 7(d)(2), I certify that the foregoing *Memorandum in Support of Defendants First Call Bail & Surety, Inc.'s Allegheny Cas. Ins. Co.'s, Int'l Fidelity Ins. Co.'s, and Ratzburg's Motion to Dismiss Plaintiffs' Complaint* is 6458 words, excluding caption, certificate of compliance, table of contents, table of authorities, exhibit index, and certificate of service, as counted by Microsoft Word.

CROWLEY FLECK PLLP

By: /s/ *Matthew A. Baldassin*
　　Matthew A. Baldassin

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was served upon the following counsel of record by the means designated below this 30th day of May, 2019:

| | |
|---|---|
| [  ] U.S. Mail<br>[  ] Hand Delivery<br>[  ] Facsimile<br>[X] ECF<br>[  ] Email | Andrea R. Woods<br>American Civil Liberties Union Foundation,<br>Criminal Law Reform Project<br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>awoods@aclu.org |
| [  ] U.S. Mail<br>[  ] Hand Delivery<br>[  ] Facsimile<br>[X] ECF<br>[  ] Email | Alex Rate<br>Elizabeth Ehret<br>American Civil Liberties Union of Montana<br>Foundation Inc.<br>P.O. Box 9138<br>Missoula, MT 59807<br>ratea@aclumontana.org<br>ehrete@aclumontana.org |
| [  ] U.S. Mail<br>[  ] Hand Delivery<br>[  ] Facsimile<br>[X] ECF<br>[  ] Email | Toby J. Marshall<br>Beth E. Terrell<br>Blythe H. Chandler<br>Terrell Marshall Law Group, PLLC<br>936 N. 34th Street, Suite 300<br>Seattle, WA 98103<br>tmarshall@terrellmarshall.com<br>bterrell@terrellmarshall.com<br>bchandler@terrellmarshal.com |
| [X] U.S. Mail<br>[  ] Hand Delivery<br>[  ] Facsimile<br>[  ] ECF<br>[  ] Email | Vanness Baker<br>310 Courtyard Circle, #3<br>Corvallis, MT 59828 |

[X] U.S. Mail                    Montana Civil Assistance Group
[  ] Hand Delivery               Attn: Vanness Baker
[  ] Facsimile                   310 Courtyard Circle, #3
[  ] ECF                         Corvallis, MT 59828
[  ] Email


                                 /s/ Matthew A. Baldassin
                                 Matthew A. Baldassin