Matthew A. Baldassin
Jeffrey R. Kuchel
CROWLEY FLECK PLLP
P.O. Box 7099
Missoula, MT 59807-7099
Telephone: (406) 523-3600
Fax: (406) 523-3636
mbaldassin@crowleyfleck.com
jkuchel@crowleyfleck.com

*Attorneys for Defendants Allegheny Casualty Company,
International Fidelity Insurance Company, First Call Bail and
Surety, Inc., and Michael Ratzburg*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| EUGENE DESHANE MITCHELL; SHAYLEEN MEUCHELL, on their own behalf and as next friend of B.M., <br><br> Plaintiffs, <br><br> v. <br><br> FIRST CALL BAIL AND SURETY, INC.; ALLEGHENY CASUALTY COMPANY; INTERNATIONAL FIDELITY INSURANCE COMPANY; THE MONTANA CIVIL ASSISTANCE GROUP; MICHAEL RATZBURG; VAN NESS BAKER, JR.; and JASON HAACK, <br><br> Defendants. | Cause No.: 9:19-cv-00067-DLC <br><br><br> **DEFENDANTS FIRST CALL BAIL & SURETY, INC.'S, ALLEGHENY CAS. INS. CO.'S, INT'L FIDELITY INS. CO.'S, AND MICHAEL RATZBURG'S PRELIMINARY PRETRIAL STATEMENT** |

Defendants First Call Bail and Surety, Inc., Allegheny Casualty Company,

International Fidelity Insurance Company, and Michael Ratzburg ("Defendants"),

pursuant to ¶ 7 of the Court's October 24, 2019 Order (Doc. 60) and L.R.

16.2(b)(1), submit the following Preliminary Pretrial Statement.

## A.    Brief Factual Outline of the Case

### 1.    Plaintiffs Contracted to Secure Mitchell's Conditional Release from Jail

On January 4, 2017, Plaintiff Eugene Mitchell ("Mitchell") and his partner,

Shayleen Meuchell ("Meuchell"), entered into a "Bail Bond Agreement"

("Agreement") with the First Call Bail and Surety, Inc.  International Fidelity

Insurance Company acted as surety on the associated bail bond.  Mitchell was

identified in the Agreement as "Defendant" and Meuchell as "Indemnitor."  They

agreed to pay a $228.00 premium to First Call, and in exchange, First Call agreed

to post a $1,670 bond for Mitchell's release from jail.  International Fidelity

Insurance Company acted as surety on the associated bail bond.

Plaintiffs agreed, *inter alia*, that during Mitchell's release on bond, he was

under the "control and jurisdiction" of First Call, and Plaintiffs acknowledged that

First Call had the right "to apprehend, arrest and surrender" him.  Among other

things, Plaintiffs agreed that this event would occur upon a breach of Mitchell's

obligations, including failing to appear.

> You irrevocably grant to Surety and Bail Producer, and their agents and
> representative, the right to enter your residence, or any other property
> which you own and occupy, without notice, at any time, for the purpose
> of locating, arresting and returning the defendant to custody . . . .

Agreement, ¶ 15.

The Agreement expressly permitted First Call to apprehend and arrest Mitchell if he "commit[ed] any act that constitute[d] reasonable evidence of [Mitchell's] intention to cause a forfeiture of the Bond," or "if there [was] a material increase in the risk assumed by the Surety (as determined by Surety in its sole and absolute discretion)." *Id*., ¶¶ 4(c), (i).  Plaintiffs granted the right to enter their residence without notice, at any time, and "waived and released any and all causes of action in connection therewith including torts of trespass and false imprisonment." *Id*., ¶ 15.

First Call did not lend Plaintiffs any money or charge interest, and nowhere in the Agreement did Defendants, Mitchell, or Meuchell agree or suggest that Defendants were doing so.

### 2.    Mitchell Failed to Appear and Violated the Agreement

Mitchell failed to appear for an April 2017 hearing.  The Ravalli County Justice Court subsequently issued a Notice of Bond Forfeiture, requiring that Mitchell be returned to jail or else First Call's bond would be forfeited.  The court also issued a bench warrant, authorizing night service.  First Call revoked the bond and attempted to contact Mitchell and Meuchell to request their compliance with the Agreement.  Mitchell did not respond and did not appear in court.

### 3. MCAG Apprehended Mitchell Because He Failed to Appear

First Call contacted a man named VanNess Baker to request assistance in apprehending Mitchell.  Baker was a member of Defendant Montana Civil Assistance Group ("MCAG").   On April 23, 2017 MCAG observed that Mitchell's home was occupied.  MCAG inquired about Mitchell's location and requested that Mitchell present and surrender himself on warrant and the revocation of bond.  When no one answered the door, MCAG entered the home. MCAG informed Mitchell that he had violated the conditions of his bond, apprehended him, and transported him to the Ravalli County jail where Ravalli County law enforcement arrested Mitchell on a separate warrant.  Mitchell then appeared before the court and was sentenced to 60 days in jail.

Plaintiffs plead the following causes of action:

- Counts 1- 3 - Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c).  They base their claims on alleged Kidnapping and extortion related to extension of credit

- Count 4 – Violation of the Montana Consumer Protection Act, Mont. Code Ann. § 30-14-103

- Count 5 – Trespass

- Count 6 – False Imprisonment

- Count 7 – Assault

- Count 8 – Intentional Infliction of Emotional Distress

- Count 9 – Negligent Infliction of Emotional Distress

- Count 10 – Strict Liability[1]
- Count 11 – Negligence
- Count 12 – Declaratory Judgment pursuant to 28 U.S.C. §§ 2201 *et seq.*
- Count 13 – Declaratory Judgment pursuant to 28 U.S.C. §§ 2201 *et seq.*
- Count 14 – Punitive Damages

Plaintiffs' Complaint seeks compensatory, treble, and punitive damages, as well as attorneys' fees and costs. Defendants deny Plaintiffs' allegations.

First Call pleads the following counterclaims against Mitchell and Meuchell:

- Count 1 – Breach of Contract
- Count 2 – Fraud
- Count 3 – Negligent Misrepresentation
- Count 5 –Deceit

First Call seeks compensatory, general, and special damages, as well as attorneys' fees and costs pursuant to the terms of the Agreement and the Montana Consumer Protection Act.

## B.    Basis for Federal Jurisdiction and Venue

28 U.S.C. § 1331 in conjunction with 18 U.S.C. § 1962(c) of the Racketeering and Corrupt Organizations Act ("RICO") vest the Court with

---

[1] The Court has dismissed this count.

jurisdiction over claims brought under RICO.  If the RICO claim is dismissed, the Court's jurisdiction would be eliminated.  The Court may exercise discretionary supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.  Venue is proper in the Missoula Division as Plaintiffs resided in Missoula County and the recovery of Mitchell occurred in Missoula County.  L.R. 1.2(c)(5), 3.2(b).

## C.      Factual Basis of Defendants' Defenses

Leading up to the time of Mitchell's ultimate delivery to Ravalli County law enforcement, he engaged in a series of events that were illegal, involved exceptionally poor judgment, or both.  Mitchell's misconduct led to his arrest, release on bond, re-arrest, transport to Ravalli County for delivery to law enforcement, arrest by a different bail bondsman for a separate criminal offense and under separate bond, delivery to Ravalli County Sheriff's Department personnel on that separate bond, and ultimate conviction and incarceration.  He is very familiar with Montana's criminal justice system and the intricacies and obligations associated with bail bond practices in Montana.  Plaintiffs engaged First Call knowing that they could not and would not comply with the terms of the Agreement.  Their decisions and conduct, and the conduct of other defendants and third parties, led to Mitchell's arrest any injuries allegedly suffered by Plaintiffs.

According to the express terms of Agreement, Plaintiffs waived and released any claims arising from Plaintiffs' breach of the Agreement and resulting recovery and delivery to law enforcement.  They assumed the risk of any injury arising from that recovery both verbally, by their conduct, and through the express terms of the Agreement.  They should be estopped from recovering on any of their claims based on their false representations and their withholding or concealment of material facts in order to induce First Call to post bail on Mitchell's behalf.

There exists a bondsman's privilege in Montana.  Defendants were entitled, and in this case required, to engage an independent contractor to exercise that privilege.  MCAG and its members did not act as any of Defendants' agents, and Defendants exercised no control over MCAG's conduct.  The facts surrounding MCAG's arrest are disputed and may be critical to determination of the scope of the bail bondsman's privilege in this case.

To prevail on their RICO claims, Plaintiffs must establish an ongoing enterprise that involved a pattern of racketeering through the conduct of predicate acts.  Here, the predicate acts are alleged to be kidnapping and extortionate conduct involving credit transactions.  The recovery of Mitchell as a fugitive was lawful – there was no kidnapping.  There was also no extension of credit and no extortion.  Also absent here was a pattern of conduct, another *prima facie* element of a RICO

claim.  The alleged predicate acts occurred over a short period of time, involved a single group of claimants, and related to a single alleged scheme.

## D.     Legal Theory of Defenses and Counterclaims

**1.**     Plaintiffs fail to state a claim upon which relief can be granted. Defendants anticipate that Plaintiffs will be unable to prove each of the elements of the claims asserted in Plaintiffs' Complaint.  Defendants will dismiss the defense at the final pretrial conference if it does not appear to be reasonably supported by the facts and the law.

**2.**     Defendants complied with all applicable state and federal statutes, rules, and regulations.

**3.**     Plaintiffs' claims are barred by the applicable statutes of limitations. *E.g.* MCA §§ 27-2-202, 204, 211.

**4.**     Plaintiffs are entitled to no relief because they come before the Court with unclean hands.  Mont. Code Ann. § 1-3-208.  The broke the law repeatedly and then breached the Agreement.  They should not now benefit through their own misconduct.

**5.**     Plaintiffs knowingly waived and relinquished rights to assert all, or some of, the claims alleged against Defendants in their recognition, acceptance, and execution of the terms of the Agreement.  Lenz. V. FSC Securities Corp., 414 P.3d 1262 (2018).  Plaintiffs' relinquishment was both express as set out in their

applications for bail bond and the Bail Bond Agreement and implied by Plaintiffs'
conduct in contacting First Call and asking for its posting of a bond to secure
Mitchell's release.

6.      Plaintiffs are equitably and promissorily estopped from recovery.
Turner v. Wells Fargo Bank, N.A., 291 P.3d 1082 (2012).  Plaintiffs knew of and
expressly acknowledged the risk of recovery, retention, and delivery to law
enforcement arising from their failure to comply with the terms of the Agreement
and represented that they would appear before the court as ordered, and as required
by the Bond and Agreement.  Plaintiffs misrepresented their intentions and
concealed material facts, knowing that First Call would rely upon them in entering
into the Agreement.  First call was required to recover Mitchell and surrender him
to law enforcement, incurring expenses and resulting in this litigation.  Defendants
will be materially prejudiced if Plaintiffs are allowed to proceed with their claims.

7.      Should the trier of fact conclude that both parties engaged in unlawful
conduct, Plaintiffs' claims are barred by the doctrine of *in pari dilecto*.  See e.g.
Patten v. Raddatz, 895 P.2d 633 (1995).

8.      Plaintiffs' claims are barred, in whole or in part, by their consent and
acquiescence to the conduct which they allege to have caused their damages, both
by their conduct and contractually.  Miller v. Kleppen, 438 P.3d 806; Rest. 2d of

Torts § 892A.  Defendants had the right to recover Mitchell as a fugitive.  Plaintiffs acknowledged that right and consented to that recovery.

9.     Plaintiffs' alleged injuries and damages are the sole and proximate consequence of Plaintiffs' own acts or omissions.  Under the doctrines of comparative fault, comparative or contributory negligence, and/or comparative causation, Plaintiffs damages, if any, must fail or be reduced accordingly.  See Mont. Code Ann. § 27-1-702, 703, 719, and related case law.

10.     The occurrence, injuries and damages claimed by Plaintiff were proximately caused by the acts and omissions of Plaintiffs and/or other third parties over whom Defendants had no control.  The occurrence, and any injuries or damages, were the result of intervening or superseding causes.  Busta v. Columbus Hospital, 916 P.2d 122 (1996), Faulconbridge v. State, 142 P.3d 777 (2006); LaTray v. City of Havre, 999 P.2d 1010, 1016 (2000) (holding modified by Samson v. State, 69 P.3d 1154 (2003)).

11.     Plaintiffs' claims are barred to the extent that Plaintiff incurred or assumed the risks of which Plaintiffs complain in this action.  This defense is based on contract, and on MCA §§ 27-1-702, 703 and case law interpreting these statutes.  Plaintiffs  expressly  acknowledged  the  unique  circumstances  under  which  the Agreement was entered and the means that may be necessary to recover Mitchell if Plaintiffs breached the Agreement.

12.     Plaintiffs' claims may be barred by Plaintiffs' failure to mitigate damages.  Spackman v. Ralph M. Parsons Co., 414 P.2d 918 (1996).  This is factually dependent and will be explored in discovery.

13.     The conduct complained of was lawful, fair, and consistent with the terms and intentions of the Montana Consumer Protection Act.  Plaintiffs' claim was brought despite being frivolous, unreasonable, or without foundation, even though it may not have been brought in subjective bad faith, thereby availing Defendants to statutory fees and costs pursuant to Montana Code Annotated § 30-14-133(3).

14.     Plaintiff's claim for punitive damages cannot be maintained because any award of punitive damages under Montana law would be by a jury that: (1) is not provided standards of sufficient clarity for determining the appropriateness, and the appropriate size, of the punitive damages award; (2) is not adequately instructed on the limits on punitive damages imposed by applicable principles of deterrents and punishment; (3) is not expressly prohibited from awarding punitive damages, or determining the amount of an award of punitive damages, in whole or in part, on the basis of invidiously discriminatory characteristics, including the residence, wealth, and corporate status of Defendants; (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with sufficient clarity the conduct or

mental state that makes punitive damages permissible; and (5) is not subject to adequate trial court and appellate judicial review for reasonableness and furtherance of legitimate purposes on the basis of objective standards.

Any verdict reached under those conditions would violate Defendant's due process rights guaranteed by the Fourteenth Amendment of the United States Constitution and by Article II, Sections 4 and 17 of the Constitution of the State of Montana and would be improper under the common law and public policies of the State of Montana.  See State Farm Mutual Automobile Ins. Co. v. Campbell, 530 U.S. 408 (2003), and subsequent cases interpreting punitive damages awards.

Any award of punitive damages based on anything other than Defendants' conduct in connection with the Agreement and related conduct that is the subject of this lawsuit would violate the Due Process clause of the Fourteenth Amendment to the United States Constitution and Article II, Section 17, of the Constitution of the State of Montana.  Any other judgment for punitive damages in this case cannot protect Defendants against impermissible multiple punishment for the same alleged wrong and against punishment for extraterritorial conduct, including especially conduct that is lawful in states other than the State of Montana.  In addition, any such award would violate principles of comity under the laws of the State of Montana.  See State Farm Mutual Automobile Ins. Co. v. Campbell, 538 U.S. 408 (2003), and subsequent cases interpreting punitive damages awards.

To the extent that the law of Montana permits punishment to be measured by the net worth or financial status of Defendants and imposes greater punishment on defendants with larger net worth, such an award would be unconstitutional because it permits arbitrary, capricious, and fundamentally unfair punishments, allows bias and prejudice to infect verdicts imposing punishment, allows punishment to be imposed based on lawful profits and conduct of Defendants in other states, and allows dissimilar treatment of similarly situated defendants, in violation of the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution, the Commerce Clause, and Article II, Sections 4 and 17 of the Constitution of the State of Montana.

15.     Defendants exercised no control over, and had no agency relationship with, defendant MCAG or its members.  Defendants International Fidelity Insurance Company and Allegheny Insurance Company exercised no control, and had no agency relationship with, First Call Bail and Surety.

16.     To the extent any of Plaintiffs' claims depend upon evidence or argument of modifications to the Agreement by any prior or contemporaneous oral or written declaration that is not with the Agreement, those claims must fail.

17.     Plaintiffs' claims are preempted by the McCarran Ferguson Act. Defendants conduct was lawful and regulated under Montana's insurance code.

Because Plaintiffs cannot establish their alleged predicate acts, their RICO claims are preempted by federal law.

**D-1.   Factual and Legal Basis of First Call's Claims.**

Plaintiffs breached their agreement with First Call.  They misrepresented and concealed facts fundamental to First Call's choice to enter into the Agreement and secure Mitchell's freedom.  First Call acted on those representations and the terms of the Agreement.  Plaintiffs breached the Agreement and sought to benefit from their own misconduct, and then sued First Call for its efforts to enforce the Agreement's terms.

**E.       Computation of Damages**

Defendants International Fidelity Insurance Company, Allegheny Insurance Company, and Michael Ratzburg are not seeking damages but do seek their costs and attorneys' fees to the greatest extent allowed by law.  Defendant First Call is asserting a counterclaim for breach of contract and attorney fees pursuant to paragraph 6 of the Agreement.  First call is also asserting claims for fraud, negligent misrepresentation, and deceit.  Damages arising from those affirmative claims are to be determined.

**F.       Related State or Federal Litigation**

Defendant VanNess Baker was criminally charged in Missoula County Cause. No. DC-17-588 and pled to charges of Criminal Endangerment and

Unlawful Restraint.  The district court dismissed a charge of aggravated burglary and the prosecutor dropped charges of Assault with a weapon, and two counts of unlawful restraint.  To Defendants' knowledge, Mr. Mitchell is currently being sued in Missoula County District Court Cause Number DV-18-400.

## G.   Proposed Factual Stipulations

Contemporaneously with this pleading Plaintiffs will file a statement of the parties' stipulated facts.  Defendants submit the following additional proposed stipulated facts:

1.     Plaintiff Eugene Mitchell was facing various criminal charges in January 2017.

2.     Plaintiffs Eugene Mitchell and Shayleen Meuchell entered into a document entitled "Bail Bond Agreement".

3.     Plaintiffs Mitchell and Meuchell agreed to pay a $228.00 premium in exchange for a $1,670 bond to secure Mr. Mitchell's release from jail.

4.     The Bail Bond Agreement contained certain terms addressing the right to arrest Plaintiff Mitchell if he breached the Agreement.

5.     First Call posted the $1,670.00 bond and Plaintiff Mitchell was released from jail.

6.     Plaintiff Mitchell failed to appear before the Ravalli County Justice Court on April 19, 2017 as required by the court.

**7.** The Ravalli County Justice Court ordered Plaintiff Mitchell's bond forfeited.

**8.** The Ravalli County Justice Court executed a "Notice of Bond Forfeiture" to First Call on April 19, 2017.

**9.** On April 21, 2017 First Call executed a "Revocation of Bond" following issuance of a warrant by the Ravalli County Justice Court.

**10.** Representatives of MCAG recovered Plaintiff Mitchell on or about April 23, 2017 and thereafter transported him to the Ravalli County Detention Facility.

**H.    Proposed Amendment and Joinder Deadlines**

The parties have not agreed to a date for amendment and joinder.

**I.    Controlling Issues of Law**

The issues are defined by the legal theories set forth in §§ D and E, above.

**J.    Individuals Known or Believed to have Information**

Based on information to date, the following individuals may have information regarding claims or defenses in this case:

**1.**    Plaintiffs Eugene Mitchell
c/o Alex Rate
American Civil Liberties Union of Montana Foundation Inc.
P.O. Box 9138
Missoula, MT 59807

Mr. Mitchell is a named Plaintiff in this case and is likely to have knowledge regarding his criminal background and use of commercially-obtained bail bonds to secure his release from jail.  Mr. Mitchell is presumed to have knowledge of the events that are the subject of this litigation.

    **2.**    Shayleen Meuchell
            c/o Alex Rate
            American Civil Liberties Union of Montana Foundation Inc.
            P.O. Box 9138
            Missoula, MT 59807

Ms. Meuchell is a named Plaintiff in this case and is presumed to have knowledge of the events that are the subject of this litigation.

    **3.**    Michael Ratzburg
            c/o Matt Baldassin
            Crowley Fleck PLLP
            305 South 4th Street East, Suite 100
            Missoula, MT 59801

Mr. Ratzburg is the owner of First Call Bail and Surety, Inc ("First Call"). He has information relating to the bail bond agreement entered into by Eugene Mitchell ("Mitchell") and Shayleen Meuchell ("Meuchell").  Mr. Ratzburg also has knowledge about the Montana Civil Assistance Group's ("MCAG") efforts to recover Mitchell following Mitchell's failure to appear for his scheduled court date.

    **4.**    Vanness Baker
            745 Dry Gulch Rd
            Stevensville, MT 59870

Mr. Baker is a named defendant in this case and is believed to have knowledge of his involvement with MCAG, the efforts undertaken to recover Mitchell after he failed to appear, and his past experience with Mitchell.

**5.**      Keagan Crick
           308 Courtyard Cir
           Corvallis, MT 59828

Mr. Crick is believed to have knowledge of his involvement with MCAG, the efforts undertaken to recover Mitchell after he failed to appear, and his past experience with Mitchell.

**6.**      Skylar Reese-Bamford
           817 River St. 102B
           Hamilton, MT 59840

Skylar Reese Bamford is believed to have knowledge of her involvement with MCAG, the efforts undertaken to recover Mitchell after he failed to appear, and her past experience with Mitchell.

**7.**      Jessie White
           Address Unknown

Jessie White is believed to have knowledge of his involvement with MCAG, the efforts undertaken to recover Mitchell after he failed to appear, and his past experience with Mitchell.

**8.**      Maria Miller-Ramsey
           1060 Tefft St.
           Corvallis, MT 59828

Maria Miller is believed to have knowledge of her involvement with

MCAG, the efforts undertaken to recover Mitchell after he failed to appear, and her

past experience with Mitchell.

**9.**     Larry Lee Wallace
          312 Courtyard Cir. #1
          Hamilton, MT 59840

Larry Wallace is believed to have knowledge of his involvement with

MCAG, the efforts undertaken to recover Mitchell after he failed to appear, and his

past experience with Mitchell.

**10.**     Jason L. Haack
          P.O. Box 910
          Florence, MT 59833

Mr. Haack is believed to be the director of MCAG.  He is likely to have

knowledge about the incidents that occurred in relation to Eugene Mitchell, and the

policies and procedures used by MCAG agents.

**11.**     Detective Captain David Conway
          Missoula County Sheriff
          200 W. Broadway
          Missoula, MT 59802

Following Mitchell's arrest, Captain Conway was involved with an

investigation conducted by the Missoula County Sheriff's Department concerning

certain MCAG members' conduct.  He is likely to have knowledge concerning that

investigation.

**12.**     Majesta LaRocque & Kennedy Harrison
             118 Amber Ct., Apt. B
             Missoula, MT 59803

Ms. LaRocque and her daughter, Kennedy Harrison, are identified in

Captain Conway's report as witnesses to MCAG's conduct in surveilling or

locating Mitchell after he jumped bail.  Ms. LaRocque and Kennedy are presumed

to have knowledge regarding that encounter.

**13.**     Christy Reiling
             6000 US Hwy 93 South, Trailer 33N
             Missoula, MT 59804

Ms. Reiling was identified as a witness to MCAG's conduct in surveilling or

locating Mitchell after he jumped bail. She is presumed to have knowledge

regarding an encounter with MCAG.

**14.**     Dale Wisby
             509 River Dr.
             Lolo, MT 59847

Mr. Wisby may be or may have been a neighbor of Mr. Mitchell.  He may

have knowledge of his observations regarding MCAG's surveillance efforts with

respect to Mitchell.

**15.**     Officer Don Niemeir
             City of Hamilton Police Department
             223 S. 2nd St.
             Hamilton, MT 59840

Officer Niemier was identified in Captain Conway's investigation report as

an officer on scene at the Ravalli County Detention Center who may have arrested

Mitchell on or about April 23, 2017.  He likely has knowledge and information

concerning that event and the surrounding circumstances.

> **16.**    Ravalli County Sheriff Steve Holton
> Ravalli County Sheriff's Department
> 205 Bedford St.
> Hamilton, MT 59840

Sheriff Holton is believed to have been at the Ravalli County Detention

Center on April 23, 2017, following Mitchell's arrest.  He likely has knowledge

and information concerning that event and the surrounding circumstances.

> **17.**    Deputy Forrest Merrill
> Missoula County Sheriff's Department
> 200 W. Broadway
> Missoula, MT 59802

Deputy Merrill was identified in a police report dated April 26, 2017,

following contact with Mitchell.  Deputy Merrill may have information concerning

that contact

> **18.**    Undersheriff Rich Maricelli
> Missoula County Sheriff's Department
> 200 W. Broadway
> Missoula, MT 59802

Undersheriff Maricelli is identified in Captain Conway's investigation, and

may have knowledge about the incidents that are the subject of this litigation.

> **19.**    Sergeant Erica Alberda
> Ravalli County Sheriff's Department
> 205 Bedford St.
> Hamilton, MT 59840

Sergeant Alberda is identified in a Hamilton Police Department Case Report written by Officer Niemier, dated April 24, 2017.  She is likely to have knowledge about the events that occurred at the Ravalli County Detention Center on the night of April 23, 2017.

**20.**    Jeff Carter
Lucky Bail Bonds
225 South 1st Street #2A
Hamilton, MT 59840

Mr. Carter is a bail bondsman.  He is believed to have been at the Ravalli County Detention Center on April 23, 2017.  He is likely to have knowledge of his involvement with Mitchell on that day as well as his experience with Mitchell in the past.

**K.**    **Insurance**

There are no insurance policies covering the alleged claims.

**L.**    **Status of Settlement Discussions and Prospects for Compromise of the Case**

Plaintiffs and Defendants International Fidelity Insurance Company, Allegheny Insurance Company, First Call Bail and Surety Company have exchanged settlement demands and offers and those negotiations are ongoing. Prospects for Compromise of the case are uncertain.

**M.      Suitability of Special Procedures**

Based upon the content of the parties' initial disclosures, an order controlling discovery may ultimately be necessary.

Dated this 14th day of November, 2019.

CROWLEY FLECK PLLP

By: /s/ *Matthew A. Baldassin*      
         Matthew A. Baldassin
         Jeffrey R. Kuchel

*Attorneys for Defendants Allegheny Casualty Co., International Fidelity Insurance Co., First Call Bail and Surety, Inc., and Michael Ratzburg*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 14, 2019, I electronically filed the foregoing above with the Clerk of Court for the United States District Court for the District of Montana by using the CM/ECF system, which will send notice to each party.


*/s/ Matthew A. Baldassin*