Andrea R. Woods, *Pro Hac Vice*
American Civil Liberties Union
Foundation, Criminal Law Reform Project
125 Broad Street, 18th Floor
New York, New York 10004
Telephone: (212) 549-2528

Alex Rate
American Civil Liberties Union of
   Montana Foundation, Inc.
P.O. Box 1968
Missoula, Montana 59806
Telephone: (406) 204-0287

Toby J. Marshall, *Pro Hac Vice*
Blythe H. Chandler, *Pro Hac Vice*
Terrell Marshall Law Group, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603

Bryan Charles Tipp
Sarah M. Lockwood
TIPP COBURN & ASSOCIATES, PC
2200 Brooks Street
P.O. Box 3778
Missoula, Montana 59806-3778
Telephone: (406) 549-5186

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

| | |
|---|---|
| Eugene Deshane Mitchell, Shayleen Meuchell, *on their own behalf and as next friend of* B.M.,<br><br>          Plaintiffs,<br><br>v.<br><br>First Call Bail and Surety, Inc.; Allegheny Casualty Company; International Fidelity Insurance Company; the Montana Civil Assistance Group; Michael Ratzburg; Van Ness Baker, Jr.; and Jason Haack.<br><br>          Defendants. | Case No. 9:19-cv-0067-DLC<br><br><br>**PLAINTIFFS' PRELIMINARY PRETRIAL STATEMENT** |

Plaintiffs Shayleen Meuchell, Eugene Mitchell, and B.M., through undersigned counsel, file this preliminary pretrial statement pursuant to this Court's October 24, 2019 order. (Doc. 60.)

## I.     Brief Factual Outline of the Case

### A.     <u>Events Giving Rise to the Lawsuit</u>

1.     On January 4, 2017, Eugene Mitchell was in jail accused of Failure to Carry Proof or Exhibit Insurance (2nd) and Driving While License Suspended or Revoked. The bond set for his release was $1,670. Mitchell and his family could not afford to pay the full bond amount.

2.     To secure his release from jail, Mr. Mitchell entered into a bail bond agreement with International Fidelity and Allegheny through a bondsman, Michael Ratzburg of First Call. Ms. Meuchell acted as an indemnitor. Neither Ms. Meuchell nor Mr. Mitchell had an adequate opportunity to review the terms of the bond agreement, which was not subject to negotiation.

3.     Ratzburg agreed that Mr. Mitchell and Ms. Meuchell could pay their $228 bond premium in two installments of approximately $115. Ms. Meuchell paid $115 in person on January 4, 2017, and the remaining $115 at a Wheat Montana sandwich shop approximately one week later.

4.     During a brief exchange, Ratzburg threatened that if Mr. Mitchell did not pay the outstanding amount due on his premium or comply with the bond agreement, Ratzburg would "get" him.

5.     After his release, Mr. Mitchell inadvertently failed to appear for a court hearing on April 19, 2017. That same day, a Ravalli County Justice of the Peace issued a Notice of Bond Forfeiture to First Call and Michael Ratzburg.

6.     On April 21, 2017, Ratzburg issued his own "Revocation of Bond" on behalf of First Call and International Fidelity.

7.     Ratzburg and First Call contracted with the Montana Civil Assistance Group (MCAG) to arrest and surrender Mr. Mitchell.

8.     MCAG is a paramilitary group that engages in the apprehension, arrest, and surrender of individuals out on private bail bonds—an activity commonly known as "bounty hunting."

9.     At approximately 9:20 p.m. on April 23, 2017, Mr. Mitchell, Ms. Meuchell, and their then four-year-old child, B.M., were in bed in their pajamas. Their door was kicked in and approximately five armed men and women— Defendant Baker and MCAG members Crick, Miller, Wallace, and Reese-Bamford—entered their home, directed by Defendant Haack.

10.     The MCAG members were wearing body armor and badges and carrying firearms.

11.     Mr. Mitchell cooperated with the bounty hunters, who took him outside and "arrested" him.

12.     The bounty hunters arrived at the Ravalli County Detention Center (RCDC) with Mr. Mitchell at approximately 10:20 p.m. and requested that Mr. Mitchell be jailed.

13.     The RCDC initially refused to accept Mr. Mitchell into custody because MCAG lacked authority to arrest him. Eventually, officers from the Hamilton Police Department came to the RCDC, discovered there was a Montana Highway Patrol Warrant for Mr. Mitchell's arrest, and Mr. Mitchell was taken into custody at approximately 11:39 p.m.

14.     B.M. was traumatized by the attack. She has difficulty sleeping and wakes up in the middle of the night to ask her parents to confirm the door is locked. When someone knocks on the door, she runs and hides. She is visibly bothered by her brother's toy guns. B.M. has been in therapy to cope with these symptoms.

15.     Neither Mr. Mitchell nor Ms. Meuchell feel safe in their home.

16.     The family's front door has been damaged since April 2017, which presents a security risk and has led to increased utility bills. The family cannot afford to repair the door, which is estimated to cost approximately $2,000.

B.      Facts Relevant to RICO Claims

17.     First Call, Ratzburg, Allegheny, and International Fidelity have functioned as a continuing unit since approximately June 2014.

18.     First Call and Ratzburg—as agents of Allegheny and International Fidelity—have employed MCAG since approximately September 2015 to engage in bounty hunting.

19.     Ratzburg and First Call meet with potential bail clients to extend bail bonds and credit for bail bonding fees on behalf of International Fidelity and Allegheny. Using a form contract, Ratzburg, First Call, International Fidelity, and Allegheny require principals to consent to possible seizure, apprehension, and rearrest, including with force, in order to post their bond.

20.     Ratzburg and First Call then regularly contract with bounty hunters, including MCAG, that search for, seize, and detain principals to generate payment of bail bonding fees or to prevent the forfeiture of a bail bond deposit. Ratzburg and First Call pay MCAG 10% of the total value of the bail bond.

21.     In their years of regular operation, Allegheny, International Fidelity, Ratzburg, First Call, MCAG, Baker, and Haack have contracted with and apprehended individuals in addition to Mr. Mitchell.

## II.   Jurisdiction and Venue

22.   The Court has jurisdiction over this action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964(c), and 28 U.S.C. § 1331.

23.   The Court has supplemental jurisdiction over claims arising under state law under 28 U.S.C. § 1367.

24.   Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.

25.   This Court's jurisdiction is not in dispute.

## III.   Factual Basis of Each Claim

*First Claim: RICO Claim based on Extortionate Extension of Credit and Financing Extortionate Credit Transactions: 18 U.S.C. § 1962(c)*

26.   All Defendants conduct the affairs of a RICO enterprise, by contracting amongst themselves and with bail bonds clients. Through bail bond agreements, Managing General Agent agreements, and agreements with bounty hunters, all Defendants work in coordination to earn and protect profits via commercial bail.

27.   All Defendants work in concert to generate profits through commercial bail bonding and bounty hunting.

28.     Allegheny and International Fidelity set the terms by which Ratzburg and First Call became producers of bail bond insurance. Under those agreements, Allegheny and International Fidelity agree to underwrite bonds issued by Ratzburg and First Call, and Ratzburg and First Call are responsible for any losses due to bail forfeiture. Ratzburg and First Call are also required to contribute to "build up funds" held by Allegheny and Fidelity to further offset against any losses. These risk-management practices incentivize bounty hunting.

29.     Ratzburg and First Call, as producers of Allegheny and International Fidelity's insurance business, exercise control and management over the methods to prevent bail forfeitures, including through routinely engaging in bounty hunting. (*Id.* ¶¶ 8, 100-101, 103.) Defendants MCAG, Baker, and Haack have operated and managed the bounty hunting activities of the enterprise.

30.     Arrested persons sign Defendants' form contracts in order to secure their release from jail. These contracts explicitly contemplate the use of force to collect outstanding payments or prevent forfeiture losses.

31.     These contracts extend credit to their clients, including Mr. Mitchell, in two ways: first, by routinely accepting deferred payment on all or part of a bail bond premium or deposit, such that a bail bonds client owed an additional payment on the premium under threat of possible violence; and second, by agreeing to pay the entire outstanding amount of a bail bond in order to secure release, while

retaining the ability to recover such payment from their clients in the event of forfeiture.

32.     All Defendants contemplate the use of bounty hunting—a forceful, often violent form of apprehension and recovery—to enforce their agreements with bail bonds clients and amongst each other.

33.     From approximately September 2015 through at least April 2017, all Defendants associated together to continuously subject Surety Defendants' bail bonds clients to violence—and/or a credible threat of violence—in order to make profits and prevent financial losses for Surety Defendants.

34.     Further, International Fidelity, Allegheny, First Call, and Ratzburg willfully advanced money or property to underwrite and act as surety on secured bail bonds for persons, including Mr. Mitchell. The Surety Defendants explicitly contemplated the use of bounty hunting—including through MCAG, Baker, and Haack—in order to collect any unpaid premiums, demand payment due to forfeiture, or to enforce other provisions of the bond agreement.

35.     The Surety Defendants had both actual knowledge of and reasonable grounds to believe that the money or property advanced to back bail bonds agreements was being used directly or indirectly to engage in additional bail bonds contracts that extended credit under threat of force.

36.     Defendants continuously used their enterprise to finance credit transactions with other persons that included the threat of force.

37.     Plaintiffs were injured by this practice, including by the payment of money under threatening terms, damage to their property, and increased utility bills.

*Second Claim: RICO Claim based on Kidnapping, Extortion, Extortionate Extension of Credit, Extortionate Collection of Extension of Credit, and Financing Extortionate Credit Transactions*

38.     As discussed in Paragraphs 26–32, Defendants First Call, Ratzburg, Baker, Haack, and MCAG associate through contracts and fiscal relationships.

39.     Plaintiffs were injured by this practice, including by the payment of money under threatening terms, damage to their property, and increased utility bills.

40.     MCAG, Baker, Haack, First Call, and Ratzburg intentionally and forcibly seized Mr. Mitchell without his consent, carrying him from his home to the Ravalli County Detention Center, and keeping him there against his will. MCAG, Baker, Haack, First Call, and Ratzburg have continuously worked in concert to similarly seize and transport other persons.

41.     MCAG, Baker, Haack, First Call, and Ratzburg obtained payment of bail bonds deposits from Ms. Meuchell and Mr. Mitchell under threat of seizing and detaining him. They violently seized Mr. Mitchell and brought him to the

Ravalli County Detention Center on April 23, 2017.

42.     MCAG, Baker, Haack, First Call, and Ratzburg obtained payments and prevented forfeitures from other bail bonds clients under similar threats and uses of force.

43.     MCAG, Baker, Haack, First Call, and Ratzburg used actual and threatened arrest, detention, and kidnapping to ensure payment on outstanding bond fees and as collateral to ensure full recover of bond deposits made by Montana Defendants.

44.     Defendants Ratzburg and First Call represented to bounty hunter defendants that the reason to seize Mr. Mitchell was at least in part to recoup a $115 payment from him.

*Third Claim: RICO Claim Based on Kidnapping, Extortion,
and Extortionate Collection of Extension of Credit*

45.     As discussed in Paragraphs 29, 33, and 34, Defendants Baker, Haack, and MCAG associate through contracts and fiscal relationships.

46.     Further, MCAG has a hierarchal and organized structure.

47.     MCAG has been in operation since September 2015.

48.     As discussed in Paragraphs 31–37, Baker, Haack, and MCAG used force and the threat of force to apprehend bail bonds clients or demand payments from them. Baker, Haack, and MCAG did this for profit and as part of their organizational mission.

*Fourth Claim: Violation of the Montana Consumer Protection Act*

49.     Plaintiffs Meuchell and Mitchell purchased the services of Surety Defendants for personal, family, and household purposes to facilitate Mr. Mitchell's release from jail.

50.     Defendants First Call, Ratzburg, Allegheny, and Fidelity contract with individuals for for-profit bond services in the State of Montana.

51.     Defendants First Call, Ratzburg, Allegheny, and Fidelity use form contracts containing a number of terms subjecting their clients to intrusion and arrest. The contracts also reserve unilateral power for the companies to increase bond premiums, subject clients to location monitoring, or unlawfully restrain them.

52.     These contracts are entered into when a person is incarcerated or shortly thereafter.

*Fifth Claim: Trespass*

53.     Defendants MCAG, Baker, and Haack forcibly entered Plaintiffs' home on April 23, 2017, without valid consent. MCAG, Baker, and Haack did so at the direction of First Call and Michael Ratzburg on behalf of Allegheny and Fidelity.

54.     The forcible entry into Plaintiffs' home caused damage to the front door.

*Sixth Claim: False Imprisonment*

55.     Upon entering Plaintiffs' home, MCAG members, including Baker, instructed Plaintiffs not to move while pointing guns at them. Baker and MCAG acted on behalf of Defendants Haack, Ratzburg, First Call, Allegheny, and International Fidelity.

56.     Defendants MCAG and Baker restrained Mr. Mitchell, placed him in a vehicle, and continued to restrain his movements in handcuffs upon arrival at the Ravalli County Detention Center. Baker and MCAG took these actions on behalf of Defendants Haack, Ratzburg, First Call, Allegheny, and International Fidelity.

*Seventh Claim: Assault*

57.     Defendants MCAG and Baker forcibly entered Plaintiffs' home armed with visible weapons, including assault rifles. MCAG and Baker acted behalf of Defendants Haack, Ratzburg, First Call, Allegheny, and International Fidelity.

58.     The presence of individuals with visible weapons frightened Plaintiffs.

*Eighth Claim: Intentional Infliction of Emotional Distress*

59.     MCAG and Baker, at the direction of or as agents of Haack, Ratzburg, First Call, Allegheny, and International Fidelity, acted intentionally by forcibly entering Plaintiffs' home with visible firearms.

60.    Each Plaintiff suffered severe emotional distress as a result of Defendants' break-in.

### Ninth Claim: Negligent Infliction of Emotional Distress

61.    MCAG and Baker, at the direction or as agents of Haack, Ratzburg, First Call, Allegheny, and Fidelity, acted negligently or recklessly by forcibly entering Plaintiffs' home with visible firearms.

62.    Each Plaintiff suffered severe emotional distress as a result of Defendants' break-in.

### Tenth Claim: Strict Liability

63.    Plaintiffs' Tenth Claim was dismissed by the Court's October 9, 2019 Order. (Doc. 54.)

### Eleventh Claim: Negligence

64.    Bounty hunting is an activity that carries a grave risk of serious bodily harm of death if done unskillfully or carelessly.

65.    MCAG, Baker, and Haack undertook their apprehension of Mr. Mitchell in a reckless, unskillful, and careless manner.

### Twelfth Claim for Relief: Declaratory Judgment Act

66.    Paragraph 5 of the Bail Bond Agreement provides in part as follows: Mitchell "agrees to defend, indemnify, and hold harmless the Surety and/or Bail Producer (including all agents, representatives and employees thereof) for any

injuries, harm, losses, claims, lawsuits, damages, losses, liability, demands, actions, fees and expenses (including attorneys' fees and costs) arising out of such activities.

*Thirteenth Claim: Declaratory Judgment Act*

67.     Provisions in paragraph 5 of the Bail Bond Agreement provide as follows: Mitchell "understands, acknowledges, assumes and accepts that [his] failure to appear and resulting apprehension to custody is an activity that poses a peculiar risk of harm both to the Defendant and to others"; Mitchell "acknowledges and agrees that if [he] becomes subject to such apprehension and surrender, [he] is voluntarily participating in the activity of apprehension and recovery such that the risk of harm of such activity is not peculiar to [him]"; Mitchell "acknowledges and understands the peculiar risk of such activity and [he] is no longer a member of the general public who cannot anticipate such risk"; and Mitchell "knowingly accepts and assumes the subsequent risk of harm to [him] and others arising out of such apprehension and surrender activities."

68.     Provisions found in paragraph 15 of the Bail Bond Agreement provide as follows: Mitchell and Meuchell "irrevocably grant to Surety and Bail Producer and their agents and representatives, the right to enter your residence, or any other property that you own or occupy, without notice, at any time, for the purpose of locating, arresting, and returning [Mitchell] to custody, and subject to applicable

law, you waive and release any and all causes of action in connection therewith including, without limitation, torts of trespass and false imprisonment.

*Fourteenth Claim: Punitive Damages*

69.     Defendants were aware that bounty hunting activity by MCAG, Baker, and Haack created a high probability of injury to Plaintiffs.

70.     Defendants Ratzburg and First Call had knowledge of, or intentionally disregarded, the fact that MCAG, Baker, and Haack conducted their bounty hunting activities in a manner highly likely to cause injury to Plaintiffs. Defendants Ratzburg and First Call acted as agents of Allegheny and Fidelity.

71.     Allegheny and Fidelity set the financial terms of its agreement with Ratzburg and First Call, under which Ratzburg and First Call were responsible for any losses due to forfeiture.

72.     Allegheny and Fidelity were aware that these financial agreements with Ratzburg and First Call would incentivize bounty hunting activity.

## IV.   Legal Theories Underlying each Claim

*First Claim: RICO Claim based on Extortionate Extension of Credit and Financing Extortionate Credit Transactions: 18 U.S.C. § 1962(c)*

73.     Defendants are associated through their various contractual, agency, and business relationships. 18 U.S.C. § 1961(4).

74.     Defendants constitute an enterprise because they have (1) "a purpose"; (2) "relationships among those associated"; and (3) "longevity sufficient to permit those associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 941 (2009).

75.     RICO enterprises may include 'entirely legitimate' entities that are exploited[.]" *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 992 (C.D. Cal. 2008).

76.     Defendants have common purpose, as shown by their "ongoing organization, [both] formal [and] informal," and the fact that all Defendants have "functioned as a continuing unit" over a period of approximately two years or more. *United States v. Feldman*, 853 F.2d 648, 657 (9th Cir. 1988) (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

77.     Defendants have contractual, hierarchical, informal, fiscal, and reputational relationships with one another.

78.     Defendants have operated as a unit for a sufficient amount of time to constitute a RICO "enterprise." *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 982 (N.D. Cal. 2018) (longevity requirement satisfied after three "Class Vehicle model years"); *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (three years sufficient).

79.     All Defendants have a role in operating and managing the conduct of the enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).

80.     Defendants violated RICO when they: (1) deferred payment on a bail premium under threat of violence should Plaintiffs fail to pay; (2) engaged in actual violence to collect an outstanding payment owed on a bail premium, prevent forfeiture losses, or both; (3) broke into Plaintiffs' home, causing property damage; and (4) physically seized Plaintiff Mitchell against his will and transported him to Hamilton without his consent.

81.     The conduct described in Paragraphs 28–33 amounts to an extortionate extension of credit: "any extension of credit with respect to which it is the understanding of the creditor and the debtor at the time it is made that delay in making repayment or failure to make repayment could result in the use of violence or other criminal means to cause harm to the person, reputation, or property of any person." 18 U.S.C. § 891(6).

82.     The conduct described in Paragraphs 34–36 amounts to the financing of extortionate credit transactions. 18 U.S.C.§ 893.

*Second Claim: RICO Claim based on Kidnapping, Extortion, Extortionate Extension of Credit, Extortionate Collection of Extension of Credit, and Financing Extortionate Credit Transactions*

83.     As discussed in Paragraphs 74–80, Defendants First Call, Ratzburg, MCAG, Baker, and Haack worked in concert to extend credit to bail bonds

customers under the threat of violence. Montana Defendants also willfully advanced money of property through bail bonds contracts, deposits, and other payment plans that contemplated the use or threat of violence in bail bonds contracts.

84.     Through their seizure, detention, and transporting of Mr. Mitchell and other bail bonds clients, Defendants First Call, Ratzburg, MCAG, Baker, and Haack engaged in kidnapping. Mont. Code Ann. § 45-5-302.

85.     The conduct described in Paragraphs 41 and 42 constitutes extortion. 18 U.S.C. § 1951.

86.     Because Montana Defendants used extortionate means to collect or attempt to collect what they believed to be an outstanding payment of $115, and/or punish Mr. Mitchell and others for nonpayment of fees, they engaged in the extortionate collection of credit. 18 U.S.C. § 894.

*Third Claim: RICO Claim Based on Kidnapping, Extortion, and Extortionate Collection of Extension of Credit*

87.     MCAG, Baker, and Haack also engaged in kidnapping, extortion, and extortionate collection of credit as their own enterprise, as discussed in the preceding section.[1]

---

[1] Plaintiffs incorporate here previous references to the kidnapping, extortion, and extortionate collection of credit as applied to the third alleged RICO enterprise—a subgroup of the first and second.

*Fourth Claim: Violation of the Montana Consumer Protection Act*

88.    Plaintiffs Mitchell and Meuchell are "consumers" under the Montana Consumer Protection Act. Mont. Code Ann. § 30-14-102(1).

89.    Defendants First Call, Ratzburg, Fidelity, and Allegheny are engaged in "trade" and "commerce" within the meaning of the Montana Consumer Protection Act. Mont. Code Ann. § 30-14-102(8).

90.    Defendants First Call, Ratzburg, Fidelity, and Allegheny's contracting, as well as use of threats or actual force to collect premiums and prevent forfeitures, constitutes an unfair or deceptive practice in violation of the Montana Consumer Protection Act.

*Fifth Claim: Trespass*

91.    Plaintiffs did not consent to entry into their home by MCAG, Baker, or Haack on behalf of First Call, Ratzburg, Allegheny, or Fidelity.

*Sixth Claim: False Imprisonment*

92.    Plaintiffs did not reasonably believe they could disregard the instructions of MCAG and Baker when Defendants pointed guns at them. They were thus deprived of their liberty.

93.    Plaintiff Mitchell did not reasonably believe he could disregard the instructions of MCAG and Baker when they pointed guns at him, transported him in their vehicle, and continued to restrain him at the Ravalli County Detention

Center. He was thus deprived of his liberty.

*Seventh Claim: Assault*

94.     By forcibly entering Plaintiffs' home armed with visible weapons, including assault rifles, Defendants intentionally threatened to make harmful and/or offensive contact with Plaintiffs.

*Eighth Claim: Intentional Infliction of Emotional Distress*

95.     Each Plaintiff's severe emotional distress was a reasonably foreseeable consequence of Defendants' intentional forcible entry into their home with visible firearms, and apprehension of Mr. Mitchell.

*Ninth Claim: Negligent Infliction of Emotional Distress*

96.     Each Plaintiff's severe emotional distress was a reasonably foreseeable consequence of Defendants' negligent forcible entry into their home with visible firearms, and apprehension of Mr. Mitchell.

*Tenth Claim: Strict Liability*

97.     Plaintiffs' Tenth Claim was dismissed by the Court's October 9, 2019 Order. (Doc. 54.)

*Eleventh Claim: Negligence*

98.     MCAG, Baker, and Haack had a duty to undertake their bounty hunting in a responsible, careful, and skillful manner.

99.   MCAG, Baker, and Haack breached that duty when they apprehended Mr. Mitchell and forcibly entered Plaintiffs' home and apprehended Mitchell.

100.   All other Defendants are vicariously liable for the inherently dangerous activities of MCAG, Baker, and Haack.

### Twelfth Claim: Declaratory Judgment Act

101.   The indemnification and hold harmless clause in Paragraph 5 of the Bail Bond Agreement is unconscionable and against public policy.

### Thirteenth Claim: Declaratory Judgment Act

102.   The consent provisions in Paragraphs 5 and 15 of the Bail Bond Agreement are unconscionable and against public policy.

### Fourteenth Claim: Punitive Damages

103.   Defendants had knowledge of facts, or intentionally disregarded facts, showing that bounty hunting activities by MCAG, Baker, and Haack created a high probability of injury to Plaintiffs.

104.   Defendants proceeded, in reckless or intentional disregard of the likely risks, to engage in conduct creating a high probability of injury to Plaintiffs.

105.   Punitive damages should be assessed against Defendants in order to deter them from engaging in similar behavior creating a high risk of injury to others.

## V.    Computation of Damages

106.    Plaintiffs seek compensation for all losses and harms they have

incurred as a result of Defendants' wrongful conduct to date, including

compensation for loss of enjoyment of life, compensation for emotional distress,

humiliation, embarrassment and damage to reputation, compensation for harm they

anticipate from this date forward, compensation for general damages, exemplary or

punitive damages to prevent similar conduct in the future, and as an example to

others, and compensation for reasonable attorneys' fees and costs, together with

interest. These damage claims are not yet ripe and/or subject to computation.

107.    Plaintiffs also seek compensation for damage to their double French

doors as a result of the unlawful entry of their residence. The estimate for repairs is

$2,000.00. Finally, Plaintiffs' utility bills have increased as a result of the damage

to the door. The amount of these damages will be quantified in due course.

## VI.    Related State Litigation

108.    MCAG members Baker, Crick, White, Miller, and Wallace were

charged with various crimes in state court, including assault with a weapon,

aggravated burglary, unlawful restraint, accountability for aggravated burglary, and

criminal mischief related to this incident. Four have pled guilty to counts of

criminal endangerment, unlawful restraint, or criminal trespass.

109.    All of the criminal cases against MCAG members related to the

events in this case have been resolved.

110.   Plaintiffs are unaware of any other related state or federal litigation.

**VII.   Proposed Additional Stipulations of Fact**

111.   Plaintiffs propose the following additional statements of stipulated

facts:

112.   In January 2017, Eugene Mitchell was incarcerated facing charges of

driving with a suspended license and failure to carry proof of insurance. Doc. 59

¶ 4.[2]

113.   In January 2017, Mr. Mitchell and Shayleen Meuchell signed a Bail

Bond Agreement (Agreement) with Defendants First Call Bail & Surety, Inc.,

Michael Ratzburg, and International Fidelity Insurance Company/Allegheny

Casualty Company. Doc. 59 ¶¶ 6, 30.

114.   Pursuant to the Agreement, Plaintiffs paid a bond premium of $228 to

First Call Bail and Surety. Doc. 59 ¶¶ 5, 6.

115.   The bond premium was paid in two installments of approximately

$115, the first on January 4, 2017 and the second being approximately one week

later. Doc. 59 ¶ 31.

---

[2] Citations to the answer reference admissions by Surety Defendants.

116.   Pursuant to the Agreement, International Fidelity/Allegheny Casualty Company posted assurances of a $1,670 bond on behalf of Mr. Mitchell. Doc. 59 ¶ 6.

117.   The Agreement includes on the lower left corner of each page a footer identifying it as "Form#AIA.0301 (09/14).

118.   The Agreement is a form bail agreement provided by International Fidelity and Allegheny, through AIA. Doc. 59 ¶¶ 113, 139.

119.   The Agreement is four pages long.

120.   The first page of the Agreement, on which all signatures appear, contains a handwritten bond amount of $1,670.00 and premium amount of $228. Under the Agreement, Mr. Mitchell and Ms. Meuchell agreed to pay a $228 premium in exchange for the Surety Defendants posting a $1,670.00 bond to secure Mr. Mitchell's release from jail.

121.   The remaining three pages of the Agreement contain 18 numbered paragraphs of terms and conditions.

122.   The Bail Bond Agreement contains the words, "[i]n consideration of INTERNATIONAL FIDELITY INSURANCE COMPANY/ALLEGHENY CASUALTY COMPANY, as applicable, ("Surety"), through that Surety's duly appointed independent bail producer ("Bail Producer") (Surety and Bail Producer are sometimes together referred to as "Surety"), Issuing, or causing to be issued, a

criminal appearance bail bond described as . . . ." Doc. 59 ¶ 102.

123.   When First Call engaged MCAG to locate and effectuate Mr. Mitchell's surrender, First Call paid MCAG 10% of the bond amount. Doc. 59 ¶¶ 136, 145.

124.   AIA is a general agent for the bail line of surety for International Fidelity and Allegheny Casualty Company. Doc. 59 ¶ 24.

125.   AIA provides support services to International Fidelity and Allegheny bail bond agents. Doc. 59 ¶ 107.

126.   AIA hosts a website, https://www.aiasurety.com/about/, that contains the words "24/7 Agent Support." The website allows visitors to submit applications with the description, "Become an AIA Agent." Doc. 59 ¶¶ 107–108.

127.   Bail agents must complete an application prior to becoming agents of International Fidelity or Allegheny. Doc. 59 ¶ 116.

128.   AIA operates the website www.bailvisionpro.com. The website assists agents licensed as Insurance Producers in the State of Montana. Doc. 59 ¶ 109; Doc. 1 at ¶ 109.

129.   AIA also operates the website ExpertBail.com. Doc. 59 ¶ 110.

130.   AIA provides agents access to information concerning laws related to bail, including via the website https://www.aiasurety.com/montana-bail-resources/. Doc. 59 ¶ 111.

131.   AIA acts as a general agent for Allegheny and International Fidelity, setting underwriting authority for Allegheny and International Fidelity bail agents. Bonds issued by bail agents that are underwritten by Allegheny and Fidelity must be approved by AIA. Doc. 59 ¶ 117.

132.   Allegheny and Fidelity enter agreements with bail agents that contain financial terms of the relationship between agent and surety. Doc. 59 ¶ 118. Under these agreements, bail agents have obligations to Allegheny and Fidelity. Doc. 59 ¶ 141.

133.   Some bail agents working as producers of bonds underwritten by Allegheny and International Fidelity contribute to "build up fund" accounts. Doc. 59 ¶ 119.

134.   International Fidelity Insurance Company and Allegheny Casualty Company write surety bonds throughout the United States. Doc. 59 ¶ 90.

135.   In April 2018, IAT Insurance Group acquired IFIC Surety Group, Inc., of which International Fidelity and Allegheny are members. Doc. 59 ¶ 91.

136.   Allegheny and Fidelity provide form bail agreements for use by bail bond agents. Doc. 59 ¶ 113.

137.   Mr. Mitchell failed to appear for a court appearance on April 19, 2017. Doc. 59 ¶¶ 8, 33.

138.   A court ordered Mr. Mitchell's bond forfeited on April 19, 2017. Doc. 59 ¶ 8.

139.   First Call Bail and Surety requested the Montana Civil Assistance Group recover Mitchell and bring him into custody. Doc. 59 ¶ 8. MCAG was then retained by First Call for this purpose. Doc. 59 ¶ 36 IV.B.

140.   On April 21, 2017, First Call issued a "Revocation of Bond" for Mr. Mitchell. Doc. 59 ¶ 36.

141.   The Revocation of Bond stated, in part, that "[Defendant] have his/her bond REVOKED on the charge(s) of WARRANT upon which he/she has been duly admitted to the bail in the sum of ONE THOUSAND dollars ($1,000.00)." Doc. 59 ¶ 36.

142.    The Revocation of Bond stated that International Fidelity Company revoked and moved for exoneration of First Call and International Fidelity Insurance Company. Doc. 59 ¶ 36.

143.   First Call also signed a document entitled "Arrest of Defendant on Bail Bond" on April 21, 2017. This document stated in part: "[t]hat First call Bail & Surety, Inc and Michael Ratzburg/Owner does hereby authorize and empower VanNess Mitchell Baker it's representative and its stead, to arrest and detain Eugene Deschane Mitchell." Doc. 59 ¶¶ 37, 100.

144.    MCAG seized Mr. Mitchell and brought him into custody at the Ravalli County Detention Facility on April 23, 2017. Doc. 59 ¶ 10.

145.    After MCAG seized Mr. Mitchell, MCAG President Jason Haack called Michael Ratzburg. Doc. 59 ¶ 55.

146.    In 2016, Michael Ratzburg engaged MCAG to recover a woman named Kathryn Dutton. Doc. 59 ¶ 84.

147.    This Court has jurisdiction under 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331. Doc. 59 ¶ 13.

**VIII.  Plaintiffs' Proposed Deadlines for Joinder and Amendment**

148.    February 28, 2020.

**IX.    Controlling Issues of Law Suitable for Pretrial Disposition**

149.    Plaintiffs have filed a Motion for Partial Summary Judgment (Doc. 43), seeking summary judgment on their declaratory relief claims. Plaintiffs' Motion seeks a declaration regarding the enforceability of form contract provisions under Montana law.

**X.     Individuals Likely to Have Information to Prove or Deny Claims or Defenses Raised**

150.    Defendants and their employees and representatives—including, but not limited to International Fidelity Insurance Company, Allegheny Casualty Company, AIA Holdings, Inc., and Michael Ratzburg—c/o Matthew A. Baldassin and Jeffrey R. Kuchel, Crowley Fleck, PLLP

PLAINTIFFS' PRELIMINARY PRETRIAL STATEMENT -  28

a.      Knowledge of the facts underlying Plaintiffs' claims in this case; knowledge of the relationship among all Defendants; knowledge of the use of recovery agents pursuant to bail contracts, cooperation and coordination between Defendants; knowledge of bail contracts; knowledge of policies and procedures relating to the use of bail contracts and recovery agents; knowledge of the process of issuing a bail bond and arresting a person subject to a bail contract; knowledge of bounty hunting in general; knowledge of the facts relating to the Montana Civil Assistance Recovery Group's arrest of Plaintiff Mitchell on April 23, 2017.

151.    Montana Civil Assistance Group – 745 Dry Gulch Road, Stevensville, MT 59870

a.      Knowledge of the facts underlying Plaintiffs' claims in this case; knowledge of policies and procedures relating to the use of bail contracts and recovery agents; knowledge of MCAG organizational structure, policies, hiring practices and operational practices and procedures; knowledge of the process of issuing a bail bond and arresting a person subject to a bail contract; knowledge of bounty hunting in general; knowledge of the facts relating to the Montana Civil Assistance Recovery Group's arrest of Plaintiff Mitchell on April 23, 2017.

152.    Van Ness Baker – Stevensville, MT

a.      Knowledge of the facts underlying Plaintiffs' claims in this case; knowledge of policies and procedures relating to the use of bail contracts and

recovery agents; knowledge of MCAG organizational structure, policies, hiring practices and operational practices and procedures; knowledge of bounty hunting in general; knowledge of the facts relating to the Montana Civil Assistance Recovery Group's arrest of Plaintiff Mitchell on April 23, 2017.

      153.   Jason Haack – Colombia, South America

      a.    Knowledge of the facts underlying Plaintiffs' claims in this case; knowledge of policies and procedures relating to the use of bail contracts and recovery agents; knowledge of MCAG organizational structure, policies, hiring practices and operational practices and procedures; knowledge of bounty hunting in general; knowledge of the facts relating to the Montana Civil Assistance Recovery Group's arrest of Plaintiff Mitchell on April 23, 2017.

      154.   Skylar Reese-Bamford – Address unknown

      a.    Knowledge of the facts underlying Plaintiffs' claims in this case; knowledge of policies and procedures relating to the use of bail contracts and recovery agents; knowledge of MCAG organizational structure, policies, hiring practices and operational practices and procedures; knowledge of bounty hunting in general; knowledge of the facts relating to the Montana Civil Assistance Recovery Group's arrest of Plaintiff Mitchell on April 23, 2017.

155.   Keegan Crick – Address unknown

a.      Knowledge of the facts underlying Plaintiffs' claims in this case; knowledge of policies and procedures relating to the use of bail contracts and recovery agents; knowledge of MCAG organizational structure, policies, hiring practices and operational practices and procedures; knowledge of bounty hunting in general; knowledge of the facts relating to the Montana Civil Assistance Recovery Group's arrest of Plaintiff Mitchell on April 23, 2017.

156.   Maria Miller – Address unknown

a.      Knowledge of the facts underlying Plaintiffs' claims in this case; knowledge of policies and procedures relating to the use of bail contracts and recovery agents; knowledge of MCAG organizational structure, policies, hiring practices and operational practices and procedures; knowledge of bounty hunting in general; knowledge of the facts relating to the Montana Civil Assistance Recovery Group's arrest of Plaintiff Mitchell on April 23, 2017.

157.   Larry Wallace – Address unknown

a.      Knowledge of the facts underlying Plaintiffs' claims in this case; knowledge of policies and procedures relating to the use of bail contracts and recovery agents; knowledge of MCAG organizational structure, policies, hiring practices and operational practices and procedures; knowledge of bounty hunting in general; knowledge of the facts relating to the Montana Civil Assistance

Recovery Group's arrest of Plaintiff Mitchell on April 23, 2017.

158.   Jessie White – Address unknown

a.   Knowledge of the facts underlying Plaintiffs' claims in this case; knowledge of policies and procedures relating to the use of bail contracts and recovery agents; knowledge of MCAG organizational structure, policies, hiring practices and operational practices and procedures; knowledge of bounty hunting in general; knowledge of the facts relating to the Montana Civil Assistance Recovery Group's arrest of Plaintiff Mitchell on April 23, 2017.

159.   Eugene DeShane Mitchell, c/o Toby J. Marshall and Blythe H. Chandler, Terrell Marshall Law Group, PLLC

a.   Knowledge of facts relating to Defendants' wrongful conduct, trespass, false imprisonment, assault, intentional infliction of emotional distress, and negligent infliction of emotional distress, and damages incurred by Plaintiffs.

160.   Shayleen Meuchell, c/o Toby J. Marshall and Blythe H. Chandler, Terrell Marshall Law Group, PLLC

a.   Knowledge of facts relating to Defendants' wrongful conduct, trespass, false imprisonment, assault, intentional infliction of emotional distress, and negligent infliction of emotional distress, and damages incurred by Plaintiffs.

161.   B.M., c/o Toby J. Marshall and Blythe H. Chandler, Terrell Marshall Law Group, PLLC

a. Knowledge of facts relating to Defendants' wrongful conduct, trespass, false imprisonment, assault, intentional infliction of emotional distress, and negligent infliction of emotional distress, and damages incurred by Plaintiffs.

162. Pamela Clausen, LCPC, 1001 Sw Higgins Ave, Suite 206, Missoula, Montana, 59803; Phone 406-274-6040; Fax 833-248-9203

a. Knowledge of trauma to Mr. Mitchell, Ms. Meuchell and B.M. and counseling that resulted therefrom.

163. Majesta Larocque and daughter – Address unknown

a. Knowledge of MCAG's practices, including their conduct on or about April 21, 2017.

164. Jeff Carter – Lucky Bail Bonds, 3505, 225 S 1st St # 2A, Hamilton, MT 59840

a. Knowledge of Mr. Mitchell's surrender by MCAG on or about April 23 and 24, 2017.

165. Officer Neimeyer- Ravalli County Sheriff's Deputy, address unknown

a. Knowledge of MCAG's arrest authority; knowledge of MCAG's apprehension of Mr. Mitchell.

166. Stephen Holton – Hamilton Sheriff, address unknown

a. Knowledge of MCAG's arrest authority; knowledge of MCAG's apprehension of Mr. Mitchell.

167.   Rebecca Lynn White – Address unknown

      a.    Knowledge of MCAG's practices.

168.   William Michael Paul Formway – Address unknown

      a.    Knowledge of MCAG's practices.

169.   Jason Marks – former Chief Deputy Missoula County Attorney, 199 West Pine St., Missoula, MT  59802

      a.    Knowledge of MCAG's practices; knowledge of the legality of bounty hunting in Montana; knowledge of notice provided to MCAG regarding their practices.

170.   Dustin McGough – Address unknown

      a.    Knowledge of MCAG's practices.

171.   Kathryn Dutton – Address unknown

      a.    Knowledge of MCAG's practices.

172.   David Conway – Missoula County Sheriff's Detective, address unknown

      a.    Knowledge of MCAG's practices; knowledge of the legality of bounty hunting in Montana; knowledge of notice provided to MCAG regarding their practices.

173.   Persons presently unknown, but who Plaintiffs expect to identify in the course of discovery.

## XI.    Insurance Agreement

174.    Plaintiffs are unaware of the specific insurance agreements relevant to any possible recovery in this case.  Plaintiffs are not holders of any insurance policies that might be applied to any judgment in this case.

## XII.    Settlement Discussions to Date

175.    The parties have exchanged settlement proposals with one another.

## XIII.  Special Procedures

176.    Plaintiffs do not request any special procedures in this matter.

Dated: November 14, 2019                  Respectfully submitted,

By: /s/ Toby J. Marshall, *Pro hac Vice*
     Toby J. Marshall (lead counsel) *
     Blythe H. Chandler *
     Terrell Marshall Law Group, PLLC
     936 N. 34th Street, Suite 300
     Seattle, WA 98103
     Telephone: (206) 816-6603
     tmarshall@terrellmarshall.com
     bchandler@terrellmarshall.com

By:/s/ Alex Rate
     Alex Rate
     American Civil Liberties Union of
     Montana
     P.O. Box 9138
     Missoula, MT 59807
     Telephone: (406) 224-1447
     ratea@aclumontana.org

By: /s/ Andrea Rose Woods
  Andrea Rose Woods *
  American Civil Liberties Union Foundation
  Criminal Law Reform Project
  125 Broad Street, 18th Floor
  New York, NY 10004
  Telephone: (212) 549-2528
  awoods@aclu.org

By: /s/ Bryan C. Tipp
  Bryan Charles Tipp
  Sarah M. Lockwood
  TIPP COBURN & ASSOCIATES, PC
  2200 Brooks Street
  P.O. Box 3778
  Missoula, Montana 59806-3778
  Telephone: (406) 549-5186

*Admitted pro hac vice*

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I, Toby J. Marshall, hereby certify that on November 14, 2019, I

electronically filed the foregoing with the Clerk of the Court using the CM/ECF

system which will send notification of such filing to the following:

Matthew A. Baldassin
Jeffrey R. Kuchel
CROWLEY FLECK PLLP
P.O. Box 7099
Missoula, Montana 59807-7099
Telephone: (406) 523-3600
Facsimile: (406) 523-3636
Email: mbaldassin@crowleyfleck.com
Email: jkuchel@crowleyfleck.com

*Attorneys for Defendants Allegheny Casualty Company,
International Fidelity Insurance Company, First Call Bail and
Surety, Inc., and Michael Ratzburg*

No appearances have been entered in this case on behalf of
Defendants Baker, Haack, or MCAG.

Dated:  November 14, 2019.      TERRELL MARSHALL LAW
                                    GROUP PLLC

                                By: /s/ Toby J. Marshall, *Pro hac Vice*
                                    Toby J. Marshall, *Admitted PHV*
                                    936 North 34th Street, Suite 300
                                    Seattle, Washington, 98103
                                    Telephone: (206) 816-6603
                                    Email: tmarshall@terrellmarshall.com

                                *Attorneys for Plaintiffs*