IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

FILED
DEC 02 2019
Clerk, U.S. Courts
District Of Montana
Missoula Division

| | |
|---|---|
| EUGEN DESHANE MITCHELL, SHAYLEEN MEUCHELL, *on their own behalf and as next friend of* B.M., <br><br>Plaintiffs, <br><br>vs. <br><br>FIRST CALL BAIL AND SURETY, INC., ALLEGHENY CASUALTY COMPANY, INTERNATIONAL FIDELITY INSURANCE COMPANY, THE MONTANA CIVIL ASSISTANCE GROUP, MICHAEL RATZBURG, VAN NESS BAKER, and JASON HAACK, <br><br>Defendants. | CV 19–67–M–DLC <br><br>ORDER |

Before the Court is Plaintiffs' Motion for Partial Summary Judgment (Doc. 43) and Defendants First Call Bail and Surety, Inc., Allegheny Casualty Company, and International Fidelity Insurance Company's Rule 56(d) Motion to Allow for Discovery. (Doc. 57.) For the reasons explained, both motions will be granted in

-1-

part and denied in part.[1] Because the parties are familiar with the facts, they will not be restated here.

## Legal Standard

Summary judgment is proper when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the party opposing the motion bears the burden to demonstrate that summary judgment is not proper. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

## Discussion

On August 9, 2019, Plaintiffs moved for summary judgment on their declaratory judgment claims—claims 12 and 13 of the Complaint (Doc. 1). (Doc. 43.) Plaintiffs seek a declaration that two provisions of the Bail Bond Agreement (Doc. 1-1) are unenforceable as void for public policy and/or unconscionable. (Doc. 44 at 14, 18.) The provisions at issue include a clause that waives Defendants' liability for any harms that result from bounty hunting and requires

---

[1] To the extent this order differs from the Court's comments regarding these motions at its Rule 26(f) conference, the Court has reconsidered and will explain its reasoning *infra*.

Plaintiffs to indemnify Defendants against any associated costs including attorney fees (the "hold harmless clause")[2] and a clause that waives all claims arising from Defendants' conduct (the "waiver clause").[3] (Doc. 1-1 at 2, 4.)

---

[2] In full, the hold harmless clause reads:

In the event Defendant's apprehension and surrender is required for any reason, including Defendant's failure to appear at any of Defendant's required Court proceedings or hearings, Defendant understands, acknowledges, assumes and accepts that Defendant's failure to appear and resulting apprehension to custody is an activity that poses a peculiar risk of harm both to the Defendant and to others, including any recovery agent(s), which is beyond and differs from the risks to which members of the public are commonly and generally subjected. Defendant acknowledges and agrees that if Defendant becomes subject to such apprehension and surrender, Defendant is voluntarily participating in the activity of apprehension and recovery such that the risk of harm of such activity is not peculiar to Defendant. Defendant acknowledges and understands the peculiar risk of such activity and Defendant is no longer a member of the general public who cannot anticipate such risk. Defendant knowingly accepts and assumes the subsequent risk of harm to Defendant and others arising out of such apprehension and surrender activities. Defendant agrees to defend, indemnify and hold harmless the Surety and/or Bail Producers (including all agents, representatives and employees thereof) for any injuries, harms, losses, claims, lawsuits, damages, losses [sic], liability, demands, actions, fees and expenses (including attorneys fees and costs) arising out of such activities.

(Doc. 1-1 at 2.)

[3] In full, the waiver clause reads:

To the maximum extent permitted by applicable law, you hereby waive any and all rights you may have under federal law (including, but not limited to, Title 28, Privacy Act-Freedom of Information Act and Title 6, Fair Credit Reporting Act) and any local or state law relating to Surety obtaining, and you consent to and authorize Surety to obtain, any and all private or public information and/or records concerning you from any party or agency, private or governmental (local state or federal), including, but not limited to, credit reports, Social Security Records, criminal records, civil records, driving records, tax records, telephone records, medical records, school records, worker compensation records, and employment records. You further authorize, without reservation, any party or agency, private or governmental (local, state, or federal) contacted by Surety to furnish to Surety or Bail Producer, in accordance with applicable law, any and all private and public information and records in their possession concerning you to the Surety and direct that a copy of this document shall serve as evidence of said

The Declaratory Judgments Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Before awarding declaratory relief, a district court must "first inquire whether there is an actual case or controversy within its jurisdiction." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). Second, if a case or controversy exists, the court must decide whether to exercise its jurisdiction by analyzing the *Brillhart* factors. *Id.* (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 497 (1942)).

Defendants argue that this issue is not justiciable and amounts to a request for an advisory opinion because Defendants have not asserted their contractual rights against Plaintiffs. This is simply not the case. Defendants have already sought to dismiss Plaintiffs' claims by arguing that such claims are contractually barred. (*See* Doc. 21 at 34–35.) Additionally, by ruling that the bondsman's privilege originates in the contractual relationship between the parties (Doc. 54 at 10, 12–14), the Court has teed the parties up to argue whether and to what extent

---

authorization. You irrevocably grant to Surety and Bail Producer, and their agents and representatives, the right to enter your residence, or any other property that you own or occupy, without notice, at any time, for the purpose of locating, arresting, and returning the Defendant to custody, and subject to applicable law, you waive and release any and all causes of action in connection therewith including, without limitation, torts of trespass and false imprisonment.

(Doc. 1-1 at 4.)

Mitchell contractually consented to the conduct in this case. This necessarily places the waiver clause at issue in the litigation.

Furthermore, Plaintiffs concern that Defendants will seek to enforce the hold harmless clause against them if Plaintiffs prevail in litigation is not so speculative an injury as to preclude standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013) (standing requires more than a speculative future injury; the injury must be one that is "certainly impending"). Here, the analysis is simple: Litigation has commenced. Defendants included an indemnification clause in the contract. It requires no leap of faith to conclude that Defendants included the clause because they intend to assert it. This Court has standing, and this matter is ripe for review.

Nevertheless, the Court must still consider whether to exercise its discretion over the subject matter by analyzing the *Brillhart* factors. *Principal Life Ins.*, 394 F.3d at 672. In doing so, the Court is mindful of its duty to balance concerns of "judicial administration, comity, and fairness to the litigants," as it considers the following: (1) whether the question involves a "needless determination of state law issues"; (2) whether the action is being pursued "as a means of forum shopping"; and (3) whether the court's decision will result in "duplicative litigation." *Id.* (quoting *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir. 1994) and *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1221 (9th Cir. 1998)). These factors

are nonexclusive, and a federal court might also consider "whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue." *Id.* (quoting *Dizol*, 133 F.3d at 1225, n.5).

The Court's consideration of the contract does not involve a needless determination of state law. Here, any interpretation of state law is not needless because it is important to the parties, and the state law at issue (whether a contract is void for public policy or unconscionable) is well-settled and does not require the Court to speculate as to any novel questions.[4] Second, there is no indication that any forum shopping has occurred. This case is in federal court because Plaintiffs assert RICO claims which gives rise to federal question jurisdiction. Finally, there is no concern that this question involves duplicative litigation as there is no separate state action. Here, the declaratory judgment claims are pled in the same complaint as Plaintiffs' substantive claims which are all pending before this Court. Finally, Plaintiffs' counsel has persuasively argued that it is important to Mitchell and Meuchell to know whether the Court will enforce the indemnification of attorney fees against them in the event that they prevail, as this would frustrate

---

[4] Plaintiffs suggest that this Court may certify questions of enforceability to the Montana Supreme Court if it finds that area of law unclear. (Doc. 44 at 27–30.) However, as the Court has already determined that Montana law recognizes a common law bondsman's privilege (Doc. 54 at 10–11), there are no longer any unsettled questions presented.

-6-

their purpose in pursuing the litigation. For these reasons, the Court will exercise its discretion over Plaintiffs' declaratory judgment claims.

## I. Plaintiff's Twelfth Claim

In their twelfth claim for relief, Plaintiffs seek a declaration from the Court that the hold harmless and waiver clauses contained in paragraphs 5 and 15 of the Bail Bond Agreement are unenforceable because the provisions are contrary to public policy and unconscionable. (Doc. 1 at 64–65.) Plaintiffs argue that both contentions are purely legal inquiries, and therefore there is no factual dispute that would preclude summary judgment. (Doc. 44 at 7.)

Defendants argue that summary judgment is not proper because the enforceability of a contract does not occur in a legal vacuum and that questions of waiver and unconscionability are fact-intensive. (Doc. 55 at 24, 29.) The Court agrees with Defendants that the doctrine of unconscionability is a fact-intensive inquiry. *See Lenz v. FSC Sec. Corp.*, 414 P.3d 1262, 1274 (Mont. 2018). However, the question of whether the contract is void for public policy presents a purely legal question of contract interpretation. *Mary J. Baker Revocable Tr. v. Cenex Harvest States, Cooperatives, Inc.*, 164 P.3d 851, 857 (Mont. 2007).

Under Montana law, "all contracts[5] that have for their object, directly or indirectly, to exempt anyone from responsibility for the person's own fraud, for willful injury to the person or property of another, or for violation of law, whether willful or negligent, are against the policy of the law." Mont. Code Ann. § 28-2-702. "In *Miller* [*v. Fallon Cty.*, 721 F.2d 342 (Mont. 1986)], the Montana Supreme Court held that any waiver by which an entity (principal or agent) seeks to contractually exculpate itself from liability arising out of negligent violations of legal duties, whether those duties are rooted in case or statutes, is invalid." *Spath v. Dillon Enterprises, Inc.*, 97 F. Supp. 2d 1215, 1218 (D. Mont. 1999) (citing *Miller*, 721 F.2d at 346).

Defendants recognize that Montana law prohibits exculpatory clauses where such clauses avoid liability for a party's own negligence or intentional torts but argue that Montana law holds no such rule for indemnification clauses. (*Id.* at 12.) However, this distinction is not triggered on facts where the party incurring the indemnification obligation is the injured party.

In *Haynes v. Missoula County*, 517 P.2d 370 (Mont. 1973), the Montana Supreme Court considered the difference between exculpatory clauses (which relieve a party from responsibility for their own negligence) and indemnification

---

[5] Except for contracts with operators of recreational facilities like ski resorts, as described in Montana Code Annotated § 27-1-753. *Id.* § 28-2-702.

-8-

clauses (which simply shift the costs of liability). *Id.* at 377. The Court determined that exculpatory clauses were against public policy because they "deny the victim any redress by cancelling liability altogether" whereas an indemnification agreement is a form of liability insurance. *Id.* The Court noted that a rule finding exculpatory clauses void serves two public policy purposes: "(1) To fix primary responsibility and liability on the tortfeasor whose conduct occasioned the loss or injury, and (2) to make the victim whole." *Id.* Comparing the clauses, the Court noted that the "first and most obvious distinction" between the two is that indemnity clauses "involve the legal relations of three persons rather than just two." *Id.*

> The significant distinction, however, is that [indemnification clauses] attempt to guarantee that the person injured as a proximate result of the negligence of the insured will be compensated for such injuries, whereas enforcement of the contract [with an exculpatory clause] would have just the opposite result of denying an injured person the right to be compensated for injuries proximately caused by another's negligence.

*Id. Haynes* then provided the following example of a valid indemnification agreement: where a landlord requires a tenant to carry liability insurance to indemnify the landlord for responsibility to third parties who might be injured on the premises. *Id.* Such an agreement is valid because it does not have the effect of "cancelling liability" for the tortfeasor—he or she is held liable even if someone else pays for it. Nor does such an agreement deny the injured party redress.

Instead, it ensures that the victim is made whole by guaranteeing payment through insurance.

This is not the result advanced by Defendants. Where an indemnification agreement requires a plaintiff to indemnify a defendant for injuries the plaintiff sustains as a result of the defendant's negligence, the effect is an exculpatory clause. *See Baldwin Lynch Energy Corp. v. Schlumberger Tech. Corp.*, No. CV 12-95-BLG-DWM-JCL, 2013 WL 12130400, at *9 (D. Mont. Nov. 12, 2013) (finding and recommendation submitted but never adopted due to settlement). Were such an agreement upheld, it has the effect of "cancelling" the defendant's liability altogether and depriving the plaintiff of any remedy. Section 28–2–702 prohibits this result.

Here, the hold harmless clause purports to require the recipient of the bail bond to "defend, indemnify, and hold harmless the Surety and/or Bail Producer (including all agents, representatives and employees thereof) for any injuries, harm, losses, claims, lawsuits, damages, losses [sic], liability, demands, actions, fees and expenses (including attorneys fees and costs) arising out of such activities." (Doc. 1-1 at 2.) The problem with this language is that an agreement to immunize and indemnify the Surety and Bail Producer (and their agents) for *any* harms encompasses unintentional and non-negligently caused harms as well as negligent, willful, and fraudulently caused harms. To the extent the clause is used

to insulate the Defendants from liability or payment for their negligent, willful, or fraudulent acts as it pertains to Plaintiffs, it violates § 28–2–702.

The waiver clause contains a similar defect because it requires the recipient of a bail bond to "waive any and all rights you have under federal law" which would include Plaintiffs' RICO claim if applied here. (*Id.* at 4.) The waiver clause further requires the recipient to "waive and release any and all causes of action in connection therewith including, without limitation, torts of trespass and false imprisonment." (*Id.*) This provision violates § 28–2–702 because it seeks to exculpate Defendants from liability for their intentional torts or fraud.[6] As in *Miller*, to the extent that litigation in this case determines that Defendants are liable based on any willful, negligent or fraudulent conduct, this waiver of this liability is void for public policy. Summary judgment is granted to Plaintiffs on their twelfth claim for relief.[7] (Doc. 1 at 64–65.)

---

[6] Defendants argue that the disclaimer contained in the provision "subject to the applicable law" somehow saves the statute from invalidation under § 28–2–702. (Doc. 55 at 23.) This is not the case. "Subject to the applicable law" means that the Court applies Montana law, including § 28–2–702, which invalidates this term.

[7] This does not mean that the waiver clause is void in its entirety. The waiver clause provides the Surety with broad rights to collect various records and to enter any premises occupied by the recipient of the bail bond in the event they fail to appear for court. (*See* Doc. 1-1 at 4.) Nothing in the Court's decision has any bearing on those portions of the clause which apply to record collecting and consent to enter.

## II. Plaintiffs' Thirteenth Claim

Additionally, Plaintiffs move for summary judgment on their thirteenth claim which seeks a declaration that the consent provisions in the Bail Bond Agreement are unconscionable and contrary to public policy. Plaintiffs argue "a contract term giving an armed militia permission to break into a home with weapons drawn, before even asking the person out on bail to voluntarily surrender himself" is contrary to policy because it exempts a party from responsibility for their action. (Doc. 44 at 17.) As already noted in the Court's order on Defendants' Motion to Dismiss, this is a question of fact that implicates whether the conduct at issue conformed with the scope of consent. (Doc. 54 at 13.) In a more general sense, nothing in the consent provision conflicts with public policy as a matter of law. However, the consent provision could be invalid if the Court held that the contract was unconscionable.

In opposing Plaintiffs' Partial Motion for Summary Judgment, Defendants brought their own Motion under Federal Rule of Civil Procedure 56(d). (Doc. 57.) Defendants argue that, due to the "lightning quick" nature of this motion (it occurred before the Court had ruled on Defendants' Motion to Dismiss and before any formal discovery had begun), they lack the specific facts necessary to properly oppose the issue. For this reason, Defendants request that the Court either deny

Plaintiffs' Motion or delay its ruling until they have had the opportunity to participate in discovery. (*Id.* at 2.)

Federal Rule of Civil Procedure 56(d) provides that:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
(1) defer considering the motion or deny it;
(2) allow time to obtain affidavits or declarations or to take discovery; or
(3) issue any other appropriate order.

A party seeking relief under 56(d), must establish: "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008); *Glaukos Corp. v. Ivantis, Inc.*, No. SACV18620JVSJDEX, 2018 WL 7348853, at *5 (C.D. Cal. Dec. 13, 2018). Where, as here, a motion for partial summary judgment comes "lightning quick" before the parties have had a chance to engage in discovery, the burden on the party asserting a remedy under 56(d) is light. *Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003).

Here, Defendants have met their relatively light burden to show that discovery is warranted prior to the Court's ruling on Plaintiffs' unconscionability

-13-

argument. Defendant's counsel Matthew Baldassin submitted an affidavit that sets forth the specific facts that counsel seeks in discovery. Specifically: "Mitchell's familiarity with the criminal justice system, his understanding of the contents of those agreements and the implications of his failure to comply their terms." (Doc. 57-1 at 2.) These facts do exist. Preliminary discovery has determined that Mitchell has some familiarity with bail bondsmen, and Defendants naturally seek to know how extensive this familiarity is. Further, this information is necessary to the Court's determination of the issue. The question of whether a contract is unconscionable is a "mixed question of fact and law under the totality of the circumstances surrounding the execution of the contract." *Lenz v. FSC Sec. Corp.*, 414 P.3d 1262, 1274 (Mont. 2018). "Relevant factors include weaknesses in the contracting process like those involved in more specific rules as to contractual capacity, fraud, and other invalidating causes; the policy also overlaps with rules which render particular bargains or terms unenforceable on grounds of public policy." Restatement (Second) of Torts § 208, cmt. a.

Therefore, Defendants Rule 56(d) motion is granted in part. The Court will deny Plaintiffs' motion for summary judgment on its thirteenth claim without prejudice. Plaintiffs may renew their motion after discovery has occurred if they wish.

IT IS ORDERED that Plaintiffs' Motion for Partial Summary Judgment (Doc. 43) is GRANTED in part and DENIED in part. Plaintiffs are granted summary judgment on their twelfth claim and denied summary judgment on their thirteenth claim without prejudice. (Doc. 1 at 64.) Plaintiffs may renew this motion in accordance with the Court's scheduling order (Doc. 78) and once Defendants have completed discovery on the issues identified in Baldassin's affidavit (Doc. 57-1).

IT IS FURTHER ORDERED that Plaintiffs' Motion for Partial Summary Judgment (Doc. 30) is stricken from the record. This motion was withdrawn by counsel (Doc. 42) and is rendered moot as of this order.

IT IS FURTHER ORDERED that Defendants' Motion re Motion for Partial Summary Judgment (Doc. 57) is GRANTED in part and DENIED in part. Defendants' motion is DENIED as to Plaintiffs' twelfth claim for relief and GRANTED as to Plaintiffs' thirteenth claim.

DATED this 2nd day of December, 2019.

Dana L. Christensen, Chief District Judge
United States District Court